9  326
39a 669

---

HARROLD AND WIFE vs. SIMONDS & BAILEY.

1. Under the acts of February 1, 1817, and December 6, 1821, requiring certain deeds to be recorded within three months, it is sufficient if they were filed for record in that time.

2. A confirmation of land by law is equivalent to a patent. And after confirmation is made, the United States cannot divest the title by giving a patent to another.

## APPEAL from Lincoln.

CARTY WELLS, for the Appellants.

### POINTS.

1. The confirmation to Woods of his grant according to the survey, gave him a complete title to all the land within said survey. See 2 Howard, Stoddard vs. Chambers.

Harrold and Wife vs. Simonds & Bailey.

2. The deed from Woods to appellants being filed for record, within three months from its date, was a sufficient recording under the statute, although not actually copied on the record for several days after the expiration of the three months. And being recorded, passed the title from its date. And being older than Collier's mortgage, must prevail over it; and again,

There is no evidence that the patents cover the land in question.

3. The mortgage cannot be set up as a bar in this action.

4. The sheriff's deed conveys no title, because there is no evidence that the land was ever lawfully levied on, advertised and sold as required by statute.

BATES, for the Appellees.

POINTS.

1. I submit that the deed of gift was not operative in this action, be-because it was not recorded in lawful time. Whereas the mortgage to Collier, and under which he purchased, was recorded in proper time.

2. The patents to Collier prove a better title outstanding, than the title shown by the plaintiff. . And so, the plaintiffs cannot recover in ejectment; but if they have suffered any wrong, must seek redress in chancery.

NAPTON, J. delivered the opinion of the court.

This was an action of ejectment to recover a small tract of land, lying in Lincoln county, of which the defendants had possession.

The evidence of the plaintiff's title, consisted of,

1. A confirmation by the board of commissioners, in 1810, of the claim of Zadock Woods to 400 arpens, founded on a concession from C. D. Delassus, in 1799, and a survey of the same, made on the 21st Dec., 1803, and certified the 20th Jan., 1804.

2. A plat and certificate of survey made by Antoine Soulard in 1804.

3. A deed from Z. Woods and wife to Minerva Harrold, dated Jan. 2, 1822, filed for record April 1, 1822, and recorded on the 5th of the same month and year. The Spanish survey contains, as appears from the bill of exceptions 379 90-100 acres, and the United States survey of the same tract contains 340 28-100 acres, the United States surveyor having thrown off from the Spanish survey twenty rods on the north line. In other words, the northern line of the United States survey

Harrold and Wife vs. Simonds & Bailey.

runs twenty rods south of, and parallel with, the northern line of the Spanish survey. The deed from Woods to M. Harrold, embraces the land lying between these lines.

The defendants relied on two patents from the United States to George Collier, dated Dec. 1, 1825; and covering a part of the land in controversy; and secondly, upon a mortgage of the same land from Z. Woods to George Collier, a foreclosure of the same, and a sheriff's sale to Collier under the foreclosure. The mortgage was executed 11th Jan., 1822, and recorded 7th Feb., 1822.

The court instructed the jury at the instance of the defendants, that if the deed of mortgage was dated on the 11th January, 1822, and recorded on the 9th Feb., 1822, and the deed to Minerva Harrold was dated on the 2d January, 1822, and not recorded until the 5th of April, 1822, the deed to Collier conveyed the title.

The plaintiff took a non-suit and moved to set it aside, which was overruled, and the case is brought here by appeal.

The principal question arising in this case, is the one which springs from the instruction given by the circuit court, and this depends entirely upon the act of February 1, 1817, and the act of December 6, 1821, which was the law regulating conveyances at the time of this transaction.

The second section of the act of Feb. 1, 1817, provides that all deeds, conveyances, &c., shall be recorded in the county wherein the lands lie, within three months from the date, or the same shall be void against subsequent purchasers, so recording the said deeds, &c., within the time prescribed. The fourth section of the act of Dec. 6, 1821, provides that conveyances and other instruments of writing, by which the title of land may be affected, either in law or equity, shall not be valid, except between the parties thereto and their heirs, until the same shall have been deposited in the clerk's office for record, as the law directs. The section further declares it to be the duty of the clerk to keep lists of deeds filed in the office for record, open to the inspection of every one, with the date of each filing marked, &c. This last act was not in force until the first of March, 1822.

The act of 1821, was designed beyond doubt to be declaratory of the law, so far as it related to the filing of deeds for record Neither the act of 1804, nor that of 1817, intended to leave the rights of purchasers at the mercy of the clerks of courts. The 10th section of the act of 1804, which is the first law passed on this subject in the district of Louisiana, requires the Recorder to keep a book, in which it is his duty *immediately* to make an entry of every deed or writing *brought*

*into his office to be recorded,* mentioning therein the date, the parties and place, &c., *dating the same entry on the day on which said deed or writing was brought into his office.* It was further made his duty to record such deeds in regular succession, *according to their priority or time of being brought into said office.* These duties are moreover enforced upon the Recorders by inflicting severe penalties for their omission.

The act of 1804 required deeds to be recorded within twelve months; if not so recorded they were declared void as against subsequent purchasers and mortgagees, unless recorded before the second deed. The act of 1817, requires deeds to be recorded within *three* months, and makes all deeds not recorded within that time void as against subsequent deeds so recorded. The act of 1821 does not limit the time for recording deeds, but declares all conveyances invalid, except as between the parties thereto and their heirs, until they shall have been deposited in the clerk's office for record as the law directs. The act of 1825, is still more specific, and in terms declares that the *filing for record* shall impart notice. There is nothing in the language of any of these acts, calculated to show that it was not the design of the legislature from the first to the last to make the filing in the Recorder's office a notice to all the world; on the contrary, as much may be implied from the act of 1804, and though the next act of 1817, is silent on this subject, when it is again resumed in 1821 the law is so expressly declared, and continues to be re-enacted up to the present time.

It will be observed that the act of 1817 does not alter the provisions of the act of 1804, except in reducing the period within which deeds might be recorded, from twelve months to six. All the provisions of the last mentioned act, which required the day on which the deed was handed to the clerk to be noted in a book, and a receipt for the deed containing an abstract from the minute book to be delivered to the person filing the deed, were unaffected and unrepealed. But if the party files his deed within the three months, and the clerk fails to record it until the expiration of that time, of what avail would these requisitions of the statute be to the purchaser? According to the construction given to these acts by the circuit court of Lincoln, the title depends entirely upon the industry or integrity of the Recorder. An exact compliance with the law on the part of the purchaser, can avail him nothing, if the Recorder, over whom he has no control, thinks proper from motives of mere negligence or dishonesty, or is compelled from the press of business, to defer the execution of the part assigned to him, until the limitation expires. This construction of the law, we

think erroneous, and therefore the judgment of the circuit court will be reversed.

There is another point in the case, about which but little has been said in the briefs of the counsel, but which in another trial, it will be necessary to decide. The defendant insists that at all events the patents issued in 1825, constitute a better title than the confirmation in 1810. To support this opinion, reliance. is placed upon the opinion of the supreme court of the United States, in Wilcox vs. Jackson, Bagnoll & Byrne vs. Broderick, and perhaps other cases not now recollected. The general doctrine of these cases is, that the fee remains in the United States, until a patent issues. This doctrine we have never understood to conflict with the position assumed by the same court in other cases, and especially in the case of Strother vs. Lucas, that a confirmation by law was equivalent to a patent, and constituted a complete title. The confirmation to Zadock Woods in 1810, by virtue of the 4th section of the act of March 3d, 1807, (L. L. p. 154,) vested in him a complete title to all the land embraced within the Spanish survey, and the United States could not, in 1825, convey the same land to another.

Judgment reversed and cause remanded.