HARRY B. STRONG *vs.* MARY A. LYNN.

April 25, 1888.

Assignment for Benefit of Creditors — General Description — Reference to Annexed Schedule—Failure to Record Schedule.—Where a deed of assignment, by its terms, purports to convey all the real estate and property of the assignor of every name and nature, and, for a more particular description refers to a schedule annexed, but further recites that the intent and purpose of the deed is nevertheless to pass and convey any real and personal property of such assignor, though not enumerated in such schedule, *held*, that the schedule did not limit the operation of the deed, and that the effect of the record of the deed was not impaired by an omission of the schedule.

Same—Unrecorded Deed by Assignor Postponed to Recorded Deed by Assignee.—Where the title to certain lands appears of record to be in the assignees under such deed of assignment, a *bona fide* purchaser thereof from them, whose deed is first recorded, will be preferred to a previous grantee of the assignor in an unrecorded outstanding conveyance of the same land, executed before the assignment.

Quitclaim Deed—Priority of Record.—Under Gen. St. 1878, *c.* 40, § 21, a quitclaim deed, if placed upon record, stands on the same footing as other conveyances, and a *bona fide* grantee therein is entitled to the same preference over prior unrecorded deeds.

Action to determine adverse claims to vacant land, brought in the district court for St. Louis county, and tried by *Stearns, J.*, who ordered judgment for defendant, which was entered, and the plaintiff appealed.

*O. L. Young* and *White, Shannon & Reynolds*, for appellant.

*Wm. W. Billson*, for respondent.

VANDERBURGH, J.[1]  One Russell made a deed of assignment for the benefit of his creditors on the 7th day of October, 1875, conveying thereby to the assignees therein named all and singular his lands and tenements within the state, and all the property of every name and nature to or in which he had any title or interest; which was

[1]Mitchell, J., was absent, and took no part in this case.

therein referred to as more particularly described or enumerated in the schedule thereto annexed. It was also declared in the deed that the true meaning and intent thereof was "to grant and convey to the assignees all and singular the real and personal property of the party of the first part; and any property not enumerated and described in said schedule shall nevertheless pass to said party of the second part by virtue of these presents; the said schedule being intended to describe the property of the party of the first part for easier identification, and not to restrict the general terms of these presents hereinbefore set forth." This deed was recorded without the schedule, which was retained by the assignees, and filed by them with their final report. In November, 1879, the assignees sold the lands in controversy to the defendant for a valuable consideration, and transferred and conveyed the same by deed of quitclaim of all their right, title, and interest in and to the same, "accruing by the assignment aforesaid." The defendant took such conveyance without notice of any outstanding unrecorded deed. At the time of the assignment the lands stood of record in the name of the assignor, and the title appeared to be in him. He had, however, previously conveyed the same by deed of warranty to the plaintiff in this action, which was sent by him to the register of deeds for record in September, 1876, but was not filed for record until the 2d day of June, 1886. On his receipt of the deed the register immediately notified plaintiff that it could not be recorded, because the taxes were unpaid. The defendants' deed was duly recorded January 16, 1880.

Upon these facts, the court was clearly right in ordering judgment for the defendant.

1. The deed was complete without the schedule, which, by the terms of the deed, did not limit its operation; and the effect of the record was not impaired by the omission of the schedule. It was clearly the intent of the parties, as appearing upon the face of the instrument, that all the property of the assignor should pass to the assignees, whether designated in the schedule or not.

2. Upon the record, the title to the lands in controversy apparently passed to the assignees; and while they are not to be considered as purchasers for value, nor, as between them and their assignor, to

have acquired any other or better title or interest than he had in the property, yet a *bona fide* purchaser from them would stand precisely in the same position as if he had purchased and taken a conveyance from the assignor in ignorance of an outstanding unrecorded deed, and would be entitled to the same preference, within the intent and meaning of the recording act. *Jackson* v. *Van Valkenburgh,* 8 Cow. 260; *Varick* v. *Briggs,* 6 Paige, 323.

3. A deed of quitclaim in the form executed to defendant, and under which she claims, is placed on the same footing as deeds of bargain and sale under the present statutes, (Gen. St. 1878, c. 40, §§ 4, 21;) and a *bona fide* grantee in such deed (if it is recorded) is entitled to the same preference over an unrecorded deed. The amendment of 1875 was undoubtedly made *ex industria* to change the rule existing under the former statute as interpreted in *Marshall* v. *Roberts,* 18 Minn. 365, (405.) The object of the statute is to protect persons buying real estate in reliance upon the record. Ordinary prudence and duty required the plaintiff to see to it that his deed was seasonably recorded, and, having neglected to do so, he cannot complain if one purchasing the title in good faith as it appeared of record is preferred to him. *Merchant* v. *Woods,* 27 Minn. 396, (7 N. W. Rep. 826.)

Judgment affirmed.