Robert B. MILLER, Respondent,

v.

Hazel HENNEN, et al., Defendants,

Comet Enterprises, Inc.,
petitioner, Appellant,

Amy O. Johnson, Defendant,

Steven Coddon, E.T. Financial,
Inc., Respondents.

Nos. C3–87–2056, C5–87–2057.

Supreme Court of Minnesota.

April 14, 1989.

Reid J. Hansen, Rosemount, for Amy O. Johnson.

Gregory S. Hagge, Mound, for Robert B. Miller.

Steve Coddon, Mound, Timothy Campion, Minneapolis, for E.T. Financial.

POPOVICH, Chief Justice.

Respondent Robert Miller initiated this quiet title action in Dakota County to secure title to approximately 16 acres of uninhabitated land located in the City of Burnsville. The case was tried before the Dakota County District Court without a jury. The trial court ruled that Robert Miller was entitled to ownership of the property free and clear of any interests of appellant Comet Enterprises, Inc., subject only to the easement rights existing in the City of Burnsville.[1] The Minnesota Court of Appeals affirmed the trial court's decision, holding that Miller was a good faith purchaser under the Minnesota Recording Act and that Comet's mortgages are void as to Miller. *Miller v. Hennen*, 424 N.W. 2d 89 (Minn.App.1988). We agree and affirm.

## I.

The property in question was owned by George and Hazel Hennen when the first of three separate conveyances were made by the Hennens. On March 23, 1970 the Hennens entered into a contract for deed for the property with Circle Holding Company and Oak View Corporation. This contract for deed was never recorded. On September 10, 1974 a warranty deed was issued by the Hennens to First Guaranty Corporation.[2] This deed was lost and nev-

Mark V. Lofstrom, Minneapolis, for appellant.

1. Comet Enterprises, Inc. and Amy O. Johnson were the only parties that appealed the trial court's decision to the court of appeals. None of the other mortgage holders even entered the quiet title action. Steven Coddon, E.T. Financial, Inc. and Hazel Hennen did not appeal the trial court's judgment and did not file a notice of review in conjunction with the Comet/Johnson appeals. Both Comet and Johnson petitioned this court for review of the court of appeals' decision affirming the trial court decision. Both petitions were granted and the cases consolidated. Johnson later settled her claim with Miller and was dismissed from the case on September 22, 1988.

2. At oral argument, respondent argued that this warranty deed issued to First Guaranty by the Hennens was in satisfaction of the contract for deed between the Hennens and Circle

er recorded. On January 12, 1987, Hazel Hennen (her husband having died) made a final conveyance of the property via a quit-claim deed to Miller. Miller recorded the quitclaim deed on January 30, 1987.

Circle Holding/Oak View Corporation conveyed the property via three separate quitclaim deeds to the Cedar Holding Company. Only two of these quitclaim deeds were recorded, the first conveying the west 13.2 acres of the property was recorded on August 5, 1986 and the second conveying the east 2.8 acres of the property was recorded on March 18, 1987. Cedar Holding Company had issued seven separate mortgages on the property to First Guaranty and recorded these mortgages on March 24, 1972. Four of these mortgages were later assigned to appellant Comet Enterprises in 1986 and one to respondent Amy O. Johnson in 1978.

A second group of mortgages arose out of the warranty deed issued to First Guaranty by the Hennens. First Guaranty issued four mortgages on the property in 1980. Three of these mortgages were later assigned to Miller, one in 1983 and two in 1985. First Guaranty also issued a quit-claim deed to Investment Sales Diversified. This quitclaim deed was lost and never recorded. Investment Sales Diversified issued three mortgages on the property in 1981 and 1982, one of which was assigned to respondent E.T. Financial, Inc. in 1985. Investment Sales Diversified also issued a quitclaim deed to Park Metropolitan Investment Fund, Inc. This deed was lost and never recorded. As a result of these conveyances there were fourteen mortgages issued on the property totalling over $211,-000.

Miller's interest in the property derives from his business relations with Steven Coddon, a real estate broker. Coddon first found out about the property in 1983, when he heard from another real estate broker that one Larson, an assignee of the so-called Swenson mortgage, from the second group of mortgages on the property, was not getting paid and wanted to sell his interest. Before making an offer on the property, Coddon went to the county court-house and began looking through the tract index. He noticed there were a number of instruments related to the property. Of record at the time Coddon made his search were 14 mortgages, all arising out of entities other than the record fee owners, George and Hazel Hennen. Seven of these mortgages arose out of Cedar Holding Company's interest in the property. All seven of these mortgages were recorded in 1972, prior in time to the Swenson mortgage which Coddon contemplated purchasing.

The Swenson mortgage arose out of a group of mortgages issued by First Guaranty Corporation based on an amended 1974 warranty deed from the Hennens to First Guaranty. Along with the assigned Swenson mortgage, there were mortgages held by individuals named Clauson and Rude, and the Richfield Bank issued in 1980. Since the warranty deed from Hennen to First Guaranty was lost and never recorded, Coddon set out to determine if First Guaranty's interest in the property was valid. As part of his investigation, Coddon telephoned Hazel Hennen to ask her if she had sold the property to First Guaranty and if there was still any money owed on the property. Hennen told Coddon that First Guaranty had paid for the property in full and that a warranty deed had been issued to First Guaranty by Hennen for the property. In order to make sure the deed had been given to First Guaranty, Coddon saw an attorney for the Richfield Bank, which also held a mortgage from First Guaranty for part of the property. The attorney provided Coddon with a copy of a warranty deed issued to First Guaranty from George and Hazel Hennen dated September 10, 1974. There was no recording information on the document. Coddon also visited the property to make sure that it was unoccupied.

With this information and a copy of the deed from Hennen to First Guaranty, Coddon concluded that the mortgage was valid. He made no other inquiry regarding the seven recorded mortgages which arose out

Holding/Oak View Corporation. Appellant did not dispute this argument.

of Cedar Holding's alleged interest in the property. At the time Coddon conducted his search there was no recorded instrument reflecting a transfer of interest from the Hennens to Cedar Holding.

Coddon obtained an assignment of the Swenson/Larson mortgage for $500 on October 3, 1983, and recorded it on October 13, 1983. He then set out to foreclose on the mortgage. Since the property had a large amount of unpaid taxes on it, Coddon made an arrangement with Robert Miller in which Miller would reimburse Coddon the $5,484 Coddon had already spent, and supply any additional funds in exchange for a half interest in the property. At the time the partnership was formed, Coddon advised Miller that First Guaranty possessed the only rightful interest in the property and that in his opinion the other instruments of record were fraudulently issued.

Once the foreclosure of the Swenson mortgage was completed Coddon and Miller purchased on October 7, 1983 two additional mortgages belonging to Clauson and Rude, which had also been issued by First Guaranty in 1980. Coddon and Miller also purchased the interest of Investment Sales Diversified on November 7, 1983. Coddon considered this deed worthless and never recorded it. He then offered all of his interest in the property to Miller and Miller purchased Coddon's share via a quitclaim deed for $15,000 which was recorded March 12, 1985.

Miller initiated this quiet title action to the property on October 9, 1986. On January 12, 1987, after the commencement of the action, Miller obtained a quitclaim deed for the entire parcel from Hazel Hennen. Miller has invested approximately $65,000 in attempting to obtain ownership of this property with an estimated value of $70,-000–$100,000.

## II.

This matter was tried before a district court judge sitting without a jury. On review of such a judgment, an appellate court may reverse a finding of fact if, upon a review of the entire record, the appellate court is left with a "firm and definite con-

viction that a mistake has been made." *City of Minnetonka v. Carlson,* 298 N.W. 2d 763, 766 (Minn.1980).

## III.

The trial court and court of appeals' decisions are based on an application of the Minnesota Recording Act, Minn.Stat. § 507.34 (1986). The Recording Act provides, in pertinent part:

Every conveyance of real estate shall be recorded in the office of the county recorder * * *; and every such conveyance not so recorded shall be void as against any subsequent purchaser in good faith and for a valuable consideration of the same real estate, or any part therof, whose conveyance is first duly recorded * * *. The fact that such first recorded conveyance is in the form, or contains the terms of a deed of quitclaim and release shall not affect the question of good faith of such subsequent purchaser or be of itself notice to the subsequent purchaser of any unrecorded conveyance of the same real estate or any part thereof.

Minn.Stat. § 507.34. The goal of the statute is to protect persons who buy real estate in reliance upon the record. *Strong v. Lynn,* 38 Minn. 315, 317, 37 N.W. 448, 449 (1888). The act allows for a subsequent purchaser in good faith who records title first to obtain rights to the property as against any prior purchaser who fails to record his interest. A purchaser in good faith is one who gives valuable consideration without actual, implied or constructive notice of inconsistent outstanding rights of others. *Anderson v. Graham Investment Co.,* 263 N.W.2d 382, 384 (Minn.1978). The burden is on the party resisting the prior unrecorded title to prove that he purchased or acquired such title in good faith. *Fifield v. Norton,* 79 Minn. 264, 266, 82 N.W. 581, 581 (1900); *Mead v. Randall,* 68 Minn. 233, 236, 71 N.W. 31, 32–33 (1897).

This court has defined the types of notice which would take away an individual's status as a good faith purchaser. "Constructive notice is a creature of statute and, as a matter of law, imputes notice

to all purchasers of any properly recorded instrument even though the purchaser has no actual notice of the record." *Anderson*, 263 N.W.2d at 384. As such, a purchaser may be held to have constructive notice of a properly recorded interest, even though he has not actually seen the recorded deed. A recorded interest is constructive notice "only of the facts appearing on the face of the record." *Id.* at 385. If a county chooses to maintain a tract index, "the county is required by law to make accurate and appropriate entries and the tract index is part of the record of which a purchaser is charged constructive notice." *Howard McRoberts & Murray v. Starry*, 382 N.W. 2d 293, 297 (Minn.App.1986); *see also* Minn.Stat. § 386.05 (1986).

Implied notice has been found where one has "actual knowledge of facts which would put one on further inquiry." *Anderson*, 263 N.W.2d at 384–85. For example, if a subsequent purchaser was aware that someone other than the vendor was living on the land, the purchaser would have a duty to inquire concerning the rights of the inhabitant of the property and would be charged with notice of all facts which such an inquiry would have disclosed. *Murphy v. Anderson*, 128 Minn. 106, 111, 150 N.W. 387, 389 (1914). This court adopted the following rule for implied notice cases:

> One is not a bona fide purchaser and entitled to the protection of the recording act, though he paid a valuable consideration and did not have actual notice of a prior unrecorded conveyance from the same grantor, if he had knowledge of facts which ought to have put him on an inquiry that would have led to a knowledge of such conveyance.

*Henschke v. Christian et al.*, 228 Minn. 142, 146–47, 36 N.W.2d 547, 550 (1949). ▮ In addition to the requirements of providing valuable consideration without

notice, a good faith subsequent purchaser under the Recording Act must also record title to the property first. In order to qualify as a valid recording, the purchaser must show record title back to the record fee owner. In the case of *Board of Education of Minneapolis v. Hughes*, 118 Minn. 404, 136 N.W. 1095 (1912), this court stated:

> The [Minnesota Recording Act] cannot be construed so as to give priority to a deed recorded before, which shows no conveyance from a record owner. It was necessary, not only that the deed to plaintiff should be recorded before the deed to [the subsequent purchaser], but also that the deed to plaintiff's grantor should be first recorded.

*Id.* at 410, 136 N.W. at 1097–98. We agree with the trial court and the court of appeals that Miller has purchased his interest in the property (1) for valuable consideration, (2) in good faith, and (3) recorded first; therefore, under the Recording Act, he is entitled to the property free of any other outstanding interest.

## IV.

▮ The trial court found that Miller had provided valuable consideration for his interest in the property. The purchase price of the first Swenson mortgage was $500. Coddon expended $5,480 in acquiring an interest in the property before it was transferred to Miller. Miller has spent approximately $65,000 in attempting to obtain ownership of the property and in paying all delinquent taxes. We agree with the trial court's finding that Miller supplied valuable consideration under the Recording Act.

▮ Appellant stated at oral argument that the main focus of his argument concerned Coddon's [3] notice of prior conveyances at the time he recorded his interest.[4] At the time the Swenson/Larson mortgage was foreclosed, fourteen mort-

---

3. Due to the partnership arrangement between Coddon and Miller, Coddon's knowledge of any conflicting claims to the property can be imputed to Miller. The trial court found that knowledge of Coddon regarding title to the property was properly imputed to Miller and Miller did not appeal this finding.

4. Appellant's brief presented seven separate legal issues for consideration by the court. This court discourages the presentation of such a multitude of legal issues in a case which has reached this level in the appellate system. Only those few legal issues most central to the resolution of the case on review should be presented

gages were on record. However, none of these mortgages arose out of a chain of title recorded back to the record fee owner, Hazel Hennen. These mortgages, however, may be considered "actual knowledge of facts which would put one on further inquiry." *Anderson*, 263 N.W.2d at 384–85. We support this reasoning and find that Coddon did have a duty to investigate. In doing so, we disagree with language in the court of appeals' opinion which held that Coddon had no duty to investigate outside the tract index into the legitimacy of the other recorded mortgages on the property. We support Minnesota State Bar Association Title Standard No. 16 which provides:

> STRAY DEEDS—STRANGER TO STRANGER. A deed, contract, lease or mortgage from a stranger to the record title (including a prior owner of record) to another stranger to the record title does not make the title unmarketable but, if such instrument has not been of record for more than 15 years, inquiry should be made to ascertain the interest claimed.

Miller was required under this standard to investigate the various mortgages, including the one he contemplated purchasing, in order to determine which party had legitimate title. It is common practice among title-examining attorneys to advise prospective purchasers to inquire regarding claimed interest of strangers to title.

 Coddon's investigation of the Swenson/Larson mortgage consisted of a number of actions. He visited the property to make sure it was unoccupied; he searched the tract index to determine whether there were other recorded instruments on the property; he obtained a copy of the lost warranty deed from Hennen to First Guaranty from an attorney at the Richfield Bank; and he contacted Hazel Hennen who assured him that the warranty deed had been issued to First Guaranty and had been paid in full. Coddon failed to talk with either First Guaranty, Circle Holding or the assignees of the other mort-

gages, including Comet Enterprises. Such efforts may have been desirable given the circumstances and ultimate litigation involved. His actions, however, indicate a significant effort to insure that the interest he was acquiring was legitimate. The trial court found that Coddon had conducted a reasonable off-record search of the title to the property. We cannot say that this finding is clearly erroneous.

Miller was also the first purchaser to record title back to the record fee owner. At the time Miller acquired his interest, none of the other mortgage holders held interests which were connected by a complete chain of title back to the Hennens. By way of his quitclaim deed recorded January 30, 1987, Miller was the first to record such a chain of title.

## V.

Although the court of appeals did not base its decision on equity grounds, it "did not disagree with the trial court's conclusion that, if equity is considered, Miller's claim rates higher than appellants'." *Miller v. Hennen*, 424 N.W.2d 89, 91 (Minn. App.1988). This court has held that equitable relief may be granted in an action to determine adverse claims to real property, upon such terms and conditions as may be necessary to do justice. *Engel v. Swenson*, 191 Minn. 324, 326, 254 N.W. 2, 3 (1934). Miller has taken significant steps to investigate title and expended substantial sums of money in an effort to obtain record title and ownership of this property. Appellant and the other mortgage holders, on the other hand, failed to take any action to foreclose on delinquent mortgages or pay delinquent taxes. Although we base our decision on other grounds, we agree with the court of appeals' observation that equity lies with Miller.

Affirmed.

to the court. At oral argument, appellant was able to isolate those two issues which were the most important; namely, (1) whether respondent had actual notice of prior conveyances, and (2) whether appellant's recorded mortgages created an obligation for respondent to conduct an off-record inquiry. The other issues raised were considered by the court and are meritless.