Robert LEVINE, et al., Appellants,

v.

BRADLEY REAL ESTATE TRUST, a Massachusetts business trust, Respondent,

City of Richfield, Evest Partners, Ltd., a Texas limited partnership, TransAmerican Partners I, a New York general partnership, Goldome National Corp., etc., Defendants.

No. C5–89–2029.

Court of Appeals of Minnesota.

June 12, 1990.

Review Denied Aug. 7, 1990.

Christopher J. Dietzen, Gary A. Van Cleve, Larkin, Hoffman, Daly & Lindgren, Ltd., Bloomington, for appellants.

Edward J. Pluimer, Karen Clauson Maki, Dorsey & Whitney, Minneapolis, for respondent.

James J. Thompson, Jr., Julie A. Lawler, Holmes & Graven, Minneapolis, for City of Richfield.

Sally A. Johnson, Gary A. Heck, Faegre & Benson, Minneapolis, for Evest Partners, Ltd., a Texas limited partnership.

Daniel R. Tyson, Sarah Erickson, Arthur, Chapman & McDonough, Minneapolis, for TransAmerican Partners I, a New York general partnership.

Considered and decided by KALITOWSKI, P.J., and CRIPPEN and GARDEBRING, JJ.

## OPINION

GARDEBRING, Judge.

Appellants commenced this action to, among other claims, enjoin respondent from violating an unrecorded reciprocal parking easement. Appellants argue that respondent had either actual or implied notice of the unrecorded easement, thereby precluding its good faith purchaser status. After a four-day trial, the trial court concluded that respondent had neither actual nor implied notice and therefore was entitled to protection of the recording statute. Minn.Stat. § 507.34 (1988). We affirm.

## FACTS

Appellants Robert Levine, Marion Levine, Nancy Levine Saliterman, and Richard Simon commenced this action to enforce parking rights, allegedly arising out of an unrecorded 1979 reciprocal easement. The real property at issue is a shopping complex called the Richfield Superblock. Appellants' property lies in the western portion of the two blocks, once divided by Pillsbury Avenue, and consists of several stores and a health club (Levine parcel). The eastern portion is owned by respondent Bradley Real Estate Trust and is called the Richfield Hub (Bradley parcel).

In 1974, United National Corporation, a prior owner of the Bradley parcel, conveyed the northern section of what is now the Levine parcel to Penny's Super Market, Inc. United retained a one-way easement in its favor that granted its customers and tenants parking privileges. The easement was properly recorded.

In 1977, United, Penny's, and a third-party, Summit Development Corporation, submitted a planned unit development (PUD) plan to the City of Richfield. The planning commission recommended that the city council approve the PUD plan, provided that, among other things, mutually shared parking be arranged between the parties. Accordingly, United and Penny's entered into a reciprocal parking easement that ran with the land and bound subsequent purchasers. The easement was never recorded.[1]

---

1. At the same time the easement was created, United, Penny's, and Summit executed an es-

In May 1982, Penny's conveyed the Levine parcel to appellants. In 1985, after appellants built a health club on the portion of their property subject to the 1974 easement, they sought refinancing and discovered the 1979 easement was unrecorded. One of the appellants, Robert Levine, attempted to secure a recordable form of the easement by contacting the City of Richfield and writing to United. His efforts were unsuccessful. After 1985, however, Levine made no attempt to record the 1979 easement or bring action to quiet title. In the meantime, the Bradley parcel was sold, first to TransAmerican Partners I, then to Evest Partners, Ltd., and finally to respondent in March 1988.

About one month before respondent's purchase of the Bradley parcel, Richard Heuer, who was a real estate agent for respondent, called Robert Levine to inquire about purchasing the Levine parcel. Regarding this conversation, the trial court found:

> Heuer asked Levine if he was interested in selling the [Levine parcel]. Heuer testified that he told Levine that the [Bradley parcel] was being sold.
>
> Levine said he was not a motivated seller, but would sell for a price. Levine told Heuer that there were missing documents, and that he had a photocopy of an easement that he could not record. Levine said that contiguous parking was a necessity, and that all needed to resign. * * * Levine told Heuer that he had sent a document to [Evest] for signature, but that the document had not been returned.

Following this telephone conversation, Peter Rand, an employee of respondent's real estate agency, upon the request of respondent's president, inquired of the owner of the Bradley parcel, Evest, to determine whether an easement had been signed. Rand was told that the manager of the Bradley parcel, Merle Shefstad, had no knowledge of the existence of a reciprocal easement, and had not signed a cross parking document. In addition, respondent directed its attorneys to determine whether any easements existed between the two parcels. The attorneys informed respondent of the 1974 recorded easement giving customers of the Bradley parcel parking privileges on the Levine parcel. No other easement was discovered.

Respondent purchased the Bradley parcel in March 1988. In April, another meeting between Heuer, Miller and Levine was held and, during the discussion, Levine informed the parties of the 1979 easement. Subsequently, an attorney retained by respondent, searched the city files for an easement agreement, but found only an unsigned, unrecorded copy of the 1979 easement.[2] In May 1988, respondent requested that appellants confine parking by their customers to the Levine parcel.

In November 1988, respondent started towing cars of appellants' customers. Appellants' motion for a temporary restraining order was denied. In its complaint, appellants requested, among other things, judgment declaring the 1979 easement enforceable and temporarily and permanently enjoining respondent from obstructing or interfering with the use of the easement.

In July 1989, the trial court tried the issue of whether respondent had actual or implied notice of the existence of the 1979 easement. In its findings of fact, conclusions of law, and order for judgment, the trial court concluded that respondent did not have actual or implied notice and, accordingly, denied appellants' claim for temporary injunctive relief. This appeal followed.

## ISSUE

Did the trial court err in concluding that respondent did not have actual or implied

crow agreement which provided that the city attorney hold the 1979 easement in escrow until rezoning of the superblock was approved. At that time, the city attorney was to record the easement. Though rezoning occurred, the easement was not recorded. In its complaint, appellants also claim damages against the City of Richfield for breach of its fiduciary duty. This claim is still pending.

**2.** After commencement of this case, an attorney for the city found an original, fully executed 1979 easement in the file for Summit Development Corporation.

notice of the unrecorded reciprocal parking easement?

## ANALYSIS

Appellants contend that the trial court erred in concluding that respondent did not have either actual or implied notice of the existence of the 1979 reciprocal parking easement.

■ Under Minnesota law an unrecorded real estate interest is void against a subsequent purchaser in good faith. Minn.Stat. § 507.34 (1988). A purchaser in good faith is one who "gives consideration in good faith without actual, implied, or constructive notice of inconsistent outstanding rights of others." *Anderson v. Graham Investment Co.*, 263 N.W.2d 382, 384 (Minn.1978). A person who purchases land with notice that the property is burdened takes the property subject to the easement. *Levine v. Twin City Barn No. 2, Inc.*, 296 Minn. 260, 264, 207 N.W.2d 739, 742 (1973).

It is undisputed that respondent paid consideration for the Bradley parcel. Further, respondent had no constructive notice of the easement because it was not recorded. *See Anderson*, 263 N.W.2d at 384. Appellant argues, however, that respondent had both actual and implied notice of the easement.

■ First, we agree with the trial court's conclusion that respondent did not have actual notice of the 1979 easement. The supreme court has recognized that knowledge of the "mere existence" of a prior unrecorded property interest constitutes actual notice under the recording statute. *Republic National Life Insurance Co. v. Marquette Bank & Trust Co.*, 312 Minn. 162, 166, 251 N.W.2d 120, 123 (1977). Appellant argues that the February phone conversation between Heuer and Levine put respondent on actual notice of the 1979 easement. We disagree. The trial court found that the conversation only put respondent on notice that a document concerning parking privileges might be signed, not that an executed parking easement actually existed. Because the phone conversation did not convey knowledge of a signed, enforceable easement, the trial court correctly concluded respondent did not have actual notice of the 1979 easement.

■ While respondent had no actual notice of the 1979 easement, appellants also argue that respondent had implied notice of the easement. Implied notice occurs where one has "actual knowledge of facts which would put one on further inquiry." *Miller v. Hennen*, 438 N.W.2d 366, 370 (Minn.1989) (quoting *Anderson*, 263 N.W.2d at 384–85). In this case, implied notice arguably arose from respondent's knowledge that an executed reciprocal easement might exist and from the fact the parking lots were contiguous. Once aware of the possible easement and the contiguous nature of the parking lots, respondent is chargeable with notice of all facts a reasonable inquiry would have disclosed. *Miller*, 438 N.W.2d at 370.

■ First, we find appellant's argument that the trial court erred by concluding respondent fulfilled its duty of inquiry which arose because of the February conversation to be unpersuasive. From the February telephone conversation, respondent knew that Levine may have sent documents to Evest. Once on notice an easement might be signed, respondent pursued a prudent and logical course of action by contacting Evest, the owner of the Bradley parcel at the time. On behalf of Evest, Merle Shefstad represented to respondent that no parking easements existed on the property. We agree with the trial court that this discovery fulfilled respondent's duty of a reasonable inquiry.

■ Second, we believe the trial court was correct in concluding that the configuration of the parking lot did not place respondent on implied notice of the 1979 easement. The trial court found that respondent's discovery of the existence of the recorded 1974 easement, which grants unilateral parking privileges on the Levine parcel to customers of respondent's tenants, provided a reasonable explanation for the contiguous parking lot on the northern boundary of the two parcels. This finding is not clearly erroneous.

Nonetheless, appellants argue that in view of *Miller*, respondent's inquiry was inadequate. In *Miller*, the issue was whether a subsequent purchaser adequately inquired into mortgages on the record, but between parties outside the chain of title. The court held that the purchaser's investigation, which included visiting the property, searching the tract index, obtaining a copy of the warranty deed, and obtaining assurances from the prior owners, was sufficient to show a reasonable inquiry. *Id.* at 371.

Similarly, testimony at trial here shows that besides contacting the prior owner, respondent also surveyed the premises, obtained purchase agreement warranties from the seller, visited the property, and conducted a title search. Thus, appellants' argument fails.

In a different vein, we echo the trial court in noting that the principles of equity favor respondent in this case. Our decision does not rest on this premise. Yet, appellants plainly failed to assert their rights by attempting more diligently to record the easement or by beginning a quiet title action, even though they had constructive notice of the unrecorded easement from 1979 to 1985 and actual notice of it after 1985. *See Miller*, 438 N.W.2d at 371 (the supreme court noted that equity favored the purchaser who took steps to inquire into title over plaintiff who failed to protect its interests).

As a final matter, it is apparent that the trial court consolidated appellants' hearing regarding temporary injunctive relief with the trial on the merits. Minn.R.Civ.P. 65.-02(c). At oral argument both attorneys conceded that as to the claim for injunctive relief, all issues were presented and considered on the merits during the four-day trial. We therefore conclude that the trial court's October order finding respondent was a good faith purchaser, entitled to protection of the recording statute, is an adjudication on the merits.

## DECISION

The trial court did not err in concluding that respondent did not have actual, im-plied or constructive knowledge of the 1979 easement. Thus, the unrecorded easement is not enforceable against respondent.

Affirmed.