In re Kim Allen IBACH and Rebecca Sue Ibach, Debtors.

Charles W. Ries, Trustee, Plaintiff,

v.

Kenneth Ibach, and Kim Allen Ibach in his Capacity as Conservator for the Conservatorship of Kenneth Ibach, and Netbank, Defendants.

Bankruptcy No. 05–38616.
Adversary No. 06–3476.

United States Bankruptcy Court, D. Minnesota.

Dec. 12, 2008.

Charles W. Ries, Maschka Riedy & Ries, Mankato, MN, for Plaintiff.

Thomas F. Miller, Thomas F. Miller, P.A., Wayzata, MN, for Defendants.

## ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING SUMMARY JUDGMENT TO DEFENDANT NETBANK

GREGORY F. KISHEL, Bankruptcy Judge.

This adversary proceeding came on before the Court on the Plaintiff's motion for summary judgment on his claims against Defendant NetBank ("NetBank"). Plaintiff Charles W. Ries ("the Trustee") appeared as counsel for the bankruptcy estate. NetBank appeared by its attorney, Thomas F. Miller. After presenting oral argument on the motion, counsel stipulated to the Court holding the matter in abeyance pending a ruling from the Eighth Circuit Court of Appeals on an appeal from *In re Vondall*, 364 B.R. 668 (8th Cir. BAP 2007). The Eighth Circuit has issued its ruling. The decision on the Trustee's motion is memorialized as follows.

### NATURE OF PROCEEDING

The Debtors, Kim Allen Ibach and Rebecca Sue Ibach, filed a voluntary petition under Chapter 7 on October 11, 2005. Several months before the bankruptcy filing, Rebecca Ibach granted a mortgage against certain real estate to NetBank. In this adversary proceeding, the trustee of their bankruptcy estate seeks to avoid that mortgage and to recover the associated value for the bankruptcy estate.

The mortgage had been recorded in an imperfect form pre-petition; it was recorded in a corrected form post-petition. The Trustee seeks to avoid the pre-petition grant and perfection of the mortgage, using his empowerment with the rights of a hypothetical bona fide purchaser of the real estate under 11 U.S.C. § 544(a)(3). He seeks to avoid the post-petition perfection as an unauthorized transfer of property of the bankruptcy estate, pursuant to 11

U.S.C. § 549. He also requests other redress from the re-recording as an act in violation of the automatic stay in bankruptcy, 11 U.S.C. § 362(a)(4), and as the fruits of an unauthorized alteration of a previously-recorded document. In the alternative, he would have the original transfer and perfection of the mortgage avoided under color of 11 U.S.C. §§ 547(e)(2)(C) and 547(b), as a preferential transfer. Finally, to effectuate the avoidance of the mortgage, he seeks judgment against NetBank in the amount of $223,200.00, the value in the real estate that was to be attached via the original grant of mortgage.

## MOTION AT BAR

The Trustee moves for summary judgment on all of his pleaded theories of avoidance and recovery against NetBank, other than the one framed under 11 U.S.C. § 547.[1] The motion is governed by Fed. R. Bankr.P. 7056, which incorporates Fed. R.Civ.P. 56. Fed.R.Civ.P. 56(c) authorizes a grant of summary judgment on motion, where "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law."

The parties have tacitly stipulated to a small number of documentary and transactional facts, which the Trustee recited in sufficient detail in his brief. The parties agree that there is no genuine issue of material fact as to the counts involved in this motion. They are correct; this dispute presents issues of law alone.

## FACTS

1. On August 29, 2005, a closing was held for the purchase of residential real estate in Dodge County, Minnesota, with the street address of 23311 State Highway 30, Hayfield, Minnesota ("the Hayfield real estate"[2]). Debtor Rebecca Sue Ibach took title to the property via warranty deed.

2. The warranty deed noted in Finding 1 used a copy of a certificate of survey, attached as an Exhibit A, to furnish a legal description for the property. That legal description commences with the words: "That part of the Northwest Quarter of Section 20, Township 105 North, Range 16 West, Dodge County, Minnesota, described as follows: . . ." It has eight additional lines of text in the metes-and-bounds, or survey, format.

3. The warranty deed was submitted to the County Recorder of Dodge County, Minnesota for filing. It was recorded on September 1, 2005, and assigned document no. A161874. The Dodge County recorder's office made entries for the warranty deed in its reception (grantor-grantee) and tract indexes.

4. To finance her purchase of the Hayfield real estate, Rebecca Ibach borrowed $223,200.00 from NetBank. The resulting debt is memorialized via a promissory note dated August 29, 2005, executed by Rebecca Ibach.

5. On August 29, 2005, Rebecca Ibach, with the recited status of "Married Woman," executed a mortgage instrument on a standard Minnesota form ("the first mortgage instrument"). On its face, this document memorializes the grant of a mortgage to NetBank, against real estate in Dodge County, Minnesota, that is identi-

---

1. Kim Ibach had granted a separate mortgage against the same real estate to Defendant Kenneth Ibach, in connection with the Debtors' purchase of it. In his complaint, the Trustee sought relief in avoidance of that transaction as well. Those claims were settled before the Trustee filed the motion at bar.

2. The record title to the property contains at least one recitation that suggests that it is within the City of Kasson, despite its address.

fied by the street address noted in Finding 1. A legal description is set forth on an attached Exhibit A. This mortgage was to secure the debt identified in Finding 4.

6. The legal description in Exhibit A of the first mortgage instrument consists of nine lines of typescript, in the metes-and-bounds format. Its text starts with the words: "Commencing at the northwest corner of said Northwest Quarter ..." The text does not include any wording to identify the property by section, township, and range.

7. The first mortgage instrument was submitted to the Dodge County Recorder for filing. It was recorded on September 1, 2005, and was assigned document no. A161875. The Dodge County recorder's office made an entry for the first mortgage instrument in its reception (grantor-grantee) index. Because the first mortgage instrument did not identify the property by section, township, and range, an entry was not made in the office's tract index.

8. The Debtors filed their bankruptcy petition on October 11, 2005.[3]

9. In mid-October, 2005, Daniel L. Ziebell, the attorney who had prepared the first mortgage instrument for NetBank, was alerted to the omission from the legal description. He then altered the text of Exhibit A to the first mortgage instrument, inserting the words: "That portion of the Northwest Quarter of Section 20, Township 105 North, Range 16 West, Dodge County, Minnesota, described as follows: ..." It appears that he did this by typing the words on the original hard-copy of the first mortgage instrument, into the

two-line blank between the title "Exhibit A" and the text of the metes-and-bounds description. Ziebell did not prepare a new mortgage instrument. Nor did he obtain a new signed acknowledgment from Rebecca Ibach.

10. Ziebell then submitted the original hard-copy of the first mortgage instrument, as altered, to the Dodge County Recorder, with a new first sheet bearing the recitation: "This document is being re-recorded to correct the omitted portion of the legal description."[4] This document was recorded on November 1, 2005, and was assigned document no. A162997.

## DISCUSSION

### I. The Status of NetBank's Interests Under the First Mortgage Instrument.

Under the so-called "strongarm" provisions of 11 U.S.C. § 544(a), a trustee in bankruptcy is empowered with certain remedies to recover or collect assets for the bankruptcy estate. Through the provision invoked here, the trustee "shall have ... the rights and powers of, or may avoid any transfer of the property of the debtor ... that is voidable by ... a bona fide purchaser of real property ... from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists." 11 U.S.C. § 544(a)(3). This remedy is applied where a debtor's pre-petition conveyance or encumbrance of real estate would

---

3. They were among the thousands of debtors who sought bankruptcy protection under Chapter 7 in the several weeks before the effective date of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub.L. No. 109–8 ("BAPCPA"). Thus, this adversary proceeding is governed by the text

and numbering system of the Bankruptcy Code that was on the statute books before the October 17, 2005 effective date of BAPCPA.

4. This document will be called "the second mortgage instrument."

prevent it or its value from passing into the estate, but that transfer appears defective in form or perfection.

■ The statute, a federal law, vests the trustee with the status of a hypothetical bona fide purchaser of the real estate in question. The trustee's power to recover or realize on the asset, however, is defined by the state law that would govern the property in question. *In re Rolain,* 823 F.2d 198, 199 (8th Cir.1987); *In re Ozark Rest. Equip. Co., Inc.,* 816 F.2d 1222, 1229 (8th Cir.1987); *In re Griffin,* 319 B.R. 609, 613 (8th Cir. BAP 2005); *In re Marlar,* 252 B.R. 743, 752 (8th Cir.BAP 2000), *aff'd on other grounds,* 267 F.3d 749 (8th Cir. 2001); *In re Strom,* 97 B.R. 532, 536 (Bankr.D.Minn.1989); *In re Inv. Sales Diversified, Inc.,* 38 B.R. 446, 453 (Bankr. D.Minn.1984). *Cf., Smith v. Mark Twain Nat'l Bank,* 805 F.2d 278, 284 (8th Cir. 1986) (extent of trustee's "strongarm" powers under 11 U.S.C. § 544(a)(1) is "measured by the substantive law of the jurisdiction governing the property in question").

■ In Minnesota, the status of bona fide purchaser of real estate is governed in the first instance by the Recording Act, Minn.Stat. § 507.34. In pertinent part, that statute provides:

> Every conveyance of real estate shall be recorded in the office of the county recorder of the county where such real estate is situated; and every such conveyance not so recorded shall be void as against any subsequent purchaser in good faith and for a valuable consideration of the same real estate, or any part thereof, whose conveyance is first duly recorded.

A grant of a mortgage is a conveyance of real estate, *Spielman v. Albinson,* 183 Minn. 282, 236 N.W. 319, 320 (1931), and hence is within the scope of this provision. As the Trustee correctly notes, under 11 U.S.C. § 544(a)(3) he is deemed to have perfected the bankruptcy estate's interest in the underlying real estate as of October 11, 2005, the date of the Debtors' bankruptcy filing, under a hypothetical grant to the estate in a status of bona fide purchaser. So, as between NetBank's claim to a lien under the first mortgage instrument, and the bankruptcy estate's claim to the value in the Hayfield real estate[5], the question is whether the grant of lien under the first mortgage instrument was effective against the Trustee, as a hypothetical good-faith purchaser whose interest was perfected after the grant of lien and after the filing of the first mortgage instrument.

■ Under the Minnesota Supreme Court's construction of the Recording Act, a good-faith purchaser is "defined as one who gives consideration in good faith without actual, implied, or constructive notice of inconsistent outstanding rights of others." *Anderson v. Graham Inv. Co.,* 263 N.W.2d 382, 384 (Minn.1978) (citing *Bergstrom v. Johnson,* 111 Minn. 247, 250, 126 N.W. 899, 900 (1910)). In a bankruptcy case, the prefatory language of 11 U.S.C. § 544(a) ("without regard to any knowledge of the trustee or of any creditor …") takes actual knowledge out of the consideration, as to the good-faith-purchaser status of a trustee. *In re Vondall,* 352 B.R. 193, 197–198 (Bankr.D.Minn.2006), *aff'd,* 364 B.R. 668 (8th Cir. BAP 2007), *aff'd,* 279 Fed.Appx. 415 (8th Cir.2008). So, the Trustee's status as a good-faith purchaser will stand or fall on whether he had con-

---

5. The Debtors did not claim the Hayfield real estate as exempt. On April 9, 2007, the Court authorized the Trustee to sell it free and clear of liens, including NetBank's. The proceeds have been held in segregated escrow and impressed with replacement liens pending the outcome of this adversary proceeding.

structive or implied notice of NetBank's claim of lien. *In re Stradtmann,* 391 B.R. 14, 18 (8th Cir. BAP 2008).

▮ In Minnesota, constructive notice is a creature of statute, the Recording Act and Minn.Stat. § 507.32.[6] *Anderson v. Graham Inv. Co.,* 263 N.W.2d at 384; *Ripley v. Piehl,* 700 N.W.2d 540, 544 (Minn.Ct. App.2005); *Howard, McRoberts & Murray v. Starry,* 382 N.W.2d 293, 296 (Minn.Ct. App.1986). The rule of constructive notice arises "from the record of instruments affecting the title to land; ... the record is notice only of what appears upon its face, and such additional facts as its language directs attention to." *Niles v. Cooper,* 98 Minn. 39, 42, 107 N.W. 744, 745 (1906). *See also Miller v. Hennen,* 438 N.W.2d 366, 370 (Minn.1989); *Anderson v. Graham Inv. Co.,* 263 N.W.2d at 385; *Howard, McRoberts v. Starry,* 382 N.W.2d at 296–297. Implied notice, on the other hand, springs from actual knowledge of facts relating to the land but extrinsic to record title, "which would put one on further in-

quiry."[7] *Anderson v. Graham Inv. Co.,* 263 N.W.2d at 384.

▮ A defect in the legal description of real estate on the face of a recorded instrument can give constructive notice that there is an outstanding interest in that real estate under the instrument, but only where it is "apparent from the record that there is such a defect." *Howard, McRoberts v. Starry,* 382 N.W.2d at 296. In such a case, the "apparent" defect "put[s] the party [that is subject to constructive notice] on inquiry as to the existence of an outstanding interest." *Id.*(citing *Bailey v. Galpin,* 40 Minn. 319, 41 N.W. 1054, 1056 (1889)).[8]

*Howard, McRoberts v. Starry* is the most recent articulation of a melded form of constructive and inquiry notice, in which a patent, facial defect in legal description imposes a burden of further factual inquiry on an interested purchaser or transferee. Contrary to the Trustee's argument, this cut across the forms of notice is not contrary to Minnesota precedent. *See* Discus-

---

**6.** In pertinent part, this statute provides: "The record, as ... provided [in Minn.Stat. ch. 507], of any instrument properly recorded shall be taken and deemed notice to parties."

**7.** The most frequently-cited example of such an extrinsic fact is actual occupancy by a stranger to the record title. *Miller v. Hennen,* 438 N.W.2d at 370; *Murphy v. Anderson,* 128 Minn. 106, 150 N.W. 387, 389 (1914); *Niles v. Cooper,* 98 Minn. 39, 107 N.W. 744, 745 (1906).

**8.** The wording of this pronouncement seems to segue the process entailed by constructive notice over to the more involved investigation into extrinsic sources that implied, or "inquiry," notice requires. In the abstract, this blurs the strict division between the respective burdens of constructive and implied notice that was articulated in *Anderson v. Graham Inv. Co. See* 263 N.W.2d at 384–385 ("... constructive notice cannot be expanded to supply the absence of actual knowledge of facts necessary to support proof by inference

of implied notice. Where we have found implied notice, it has been based upon *actual knowledge* of facts which would put one on further inquiry, *not upon imputed record notice of such facts ...*") (initial emphasis in original; second emphasis added). However, older Minnesota authority does burden the putative good-faith purchaser with the onus of "such additional facts" as the facial content of a recorded instrument "directs attention to." *See Bailey v. Galpin,* 41 N.W. at 1056. *Anderson* endorses the vitality of this authority via its verbatim quotation, 263 N.W.2d at 385. And this allocation is no more than fair, not to mention realistic. If the form and content of the public record raise a sufficient possibility of an outstanding interest, whether that be imperfectly of record or not at all, a putative good-faith purchaser cannot use a fussy insistence on utter perfection in the record language to bar validly-granted, pre-existing adverse interests.

sion at n. 8, *supra. See also Miller v. Hennen,* 438 N.W.2d at 370–371 (presence of "fourteen mortgages . . . on record . . . [,] none . . . [arising] . . . out of a chain of title recorded back to the record fee owner," directs attention to possibility of other adverse interests, imposing obligation of further investigation on an interested party); *Howard, McRoberts v. Starry,* 382 N.W.2d at 296–297 (in notice of lis pendens, erroneous transposition of word "of" for comma in survey description by fractions of section, resulting in nominal area of described property being less than that actually held or claimed by adverse party,

"at least provid[ed] an interested party with actual knowledge of facts sufficient to put the party on inquiry notice . . .").[9]

■ And that precedent cuts entirely against the Trustee here. On its face, the first mortgage instrument memorialized Rebecca Ibach's grant of a lien against real estate that fell *somewhere* within the boundaries of Dodge County. That instrument was placed of record in the appropriate county office. Thus, all subsequent purchasers, including the Trustee in his deemed status, were on constructive notice of that fact, such as it was recited.[10]

---

9. On the facts described in *Howard, McRoberts v. Starry,* the substantive result is a stretch. Logically, nothing glares out as an "apparent" error, from such a transposition in a legal description. The defect would emerge only through a comparison with other documents of record; and even then there would be nothing on the record to indicate that the scrivener of the notice of lis pendens had not intended the reduced geographic scope. However, the soundness of the result in *Howard, McRoberts* is not germane to the matter at bar; here, the omission would be obvious to even a tyro in title examination.

10. The Trustee makes much of the fact that the defect in the legal description prevented the Dodge County recorder from memorializing the first mortgage instrument in the county's tract index. (The reason is obvious, and recognized by both sides: the omission of the "gridding" information of section, township, and range prevented the recorder's employees from identifying the property to one of the 12 townships and 432 sections within Dodge County.) But this did not mean that the first mortgage was not "of record." It was memorialized in the county's grantor-grantee index, under the names of Rebecca Ibach as well as NetBank. As such, it was readily retrievable via a search of that index under the name of the fee owner. The Trustee and NetBank have each filed the affidavit of an attorney, expressing different professional opinions as to the breadth of a search-via-index that an attorney or a "prudent abstractor" would do on behalf of a prospective purchaser. This disagreement does not create a genuine issue of material fact, however. The proper

breadth of such a search is an issue of law. Prior to 2005, county recorders' offices in Minnesota were obliged to maintain a grantor-grantee index, but there was no legal obligation to maintain a tract index. *Compare* Minn.Stat. § 386.03 (2004) ("Every county recorder *shall* keep two books, to be denominated, respectively, the grantor's and grantee's reception book . . .") *with* Minn.Stat. § 386.05 (2004) ("Every county board *may* procure at the expense of its county, and keep in the office of the county recorder, suitable books, . . . so ruled that opposite to the description of each section of land or sectional lot, and town or city lot and block, shall be a blank space, . . . in which shall be entered [certain data] . . . upon which every record affecting the title to the whole or any part thereof may be found . . .") (emphasis added, as to both). However, since 2005, the counties are required to maintain a tract index. *See* 2005 Minn. Sess. Laws Ch. 4, § 75 (amending Minn.Stat. § 386.05, to begin "Every county board *shall* procure . . ." (emphasis added)). When the Trustee's status as bona fide purchaser imposed the burden of constructive notice on him, both types of index were required by law. Thus, the Trustee *is chargeable with a search of both, as to the* existence of NetBank's adverse interest. *Howard, McRoberts v. Starry,* 382 N.W.2d at 297. And in any event, because Dodge County did maintain a tract index at the time though it was not statutorily required to do so, he was chargeable with notice of what it contained anyway. *Id.*

■ Due to the crucial omission from the legal description, the face of the first mortgage instrument was not complete in its designation of the property to be encumbered by a mortgage in favor of Net-Bank. However, given the fundamentals of survey description in Minnesota, it was utterly apparent that there was a defect in the legal description.[11] The patency of the omission, against the precision of an existing text oriented by complex metes-and-bounds, was so fundamental that, in itself, it "advise[d]" any potential purchaser "as to the particulars wherein [the description] was defective." *See Bank of Ada v. Gullikson,* 64 Minn. 91, 66 N.W. 131, 132 (1896). It thus was "sufficient to put [a hypothetical bona fide purchaser such as the trustee] on inquiry as to the existence of an outstanding interest." *Howard, McRoberts v. Starry,* 382 N.W.2d at 296.[12]

That inquiry reasonably would have led back to the grantor-grantee index, in a search under the names of those named in the first mortgage instrument. There, the warranty deed to Rebecca Ibach would have emerged, with its complete survey description. After that, personal inquiry back to Rebecca Ibach would have made it crystal-clear: despite the incomplete legal description, she had intended to encumber the property of NetBank via the first mortgage deed. And, given the complexity of the metes-and-bounds language it did contain, and the near-certainty that there was only one such irregularly-shaped parcel extant in Dodge County, the first mortgage instrument was not "altogether insufficient to locate or identify the property" and affix the lien, *Bailey v. Galpin,* 41 N.W. at 1055.

■ Thus, the Trustee in his status as bona fide purchaser cannot be deemed to have been without notice of NetBank's mortgage, and the bankruptcy estate may not be deemed to have taken an interest in the Hayfield real estate that was free and clear of the lien of that mortgage, upon the Debtors' bankruptcy filing.[13] The Trustee

---

11. Minnesota is among those states for which a scientific land survey, based on a rectangular grid system, was used from territorial days. Under the mandate of the Jefferson-drafted Land Ordinance of 1785, one of the three "Northwest Ordinances," this system divides land within the old Northwest Territory in an utterly regular fashion, into numbered townships six miles square, each such divided into numbered sections, and each township placed within a numbered range. *An ordinance for ascertaining the mode of disposing of Lands in the Western Territory,* 28 Journals of the Continental Congress 375, 375–376 (1785). *See also, in general,* "Northwest Ordinances," 8 THE NEW ENCYC. BRITANNICA 795 (15th ed.1991). Clearly, no legal description of unplatted lands within Minnesota is correct without a designation by numbered section, township, and range.

12. The facts at bar distinguish this matter from *Bank of Ada v. Gullikson,* where the defect in the legal description was held, "on its face," to be *not* so obvious as to trigger further inquiry. 66 N.W. at 132. In *Gullik-son,* the correct description would have referred to two lots in Block 13 of the original plat of the town of Ada. The recorded document referred to the lots of the same numbers in a block of the same number, in the "First addition" to that town (by then a village). *Id.* Even though the recorded plat of the First addition did not even contain a Block 13, the *Gullikson* court held that the error on the face of the mortgage instrument was not *self*-evident, so as to constitute implied notice. *Id.* Here, however, the facial error was an omission that prevented a reader from placing the subject on *any* specific place within Dodge County, glaringly out of conformity with a form of legal description prescribed since before Minnesota statehood.

13. Since the Trustee was subject to constructive notice of NetBank's interests, it is not necessary to address the question of implied, or "inquiry," notice. This avoids the thorny issue of whether § 544(a)'s neutralization of active notice defeats any imputation of implied notice, as it is defined under Minnesota law, to a trustee in bankruptcy.

is not entitled to any relief under § 544 that would divest NetBank of that lien, whether by way of declaratory judgment or avoidance.[14]

## II. The Status of NetBank's Interests Under the Second Mortgage Instrument.

 From the disposition of the count under § 544, it follows that the Trustee's claims for relief under 11 U.S.C. §§ 549, 362, and 105 [15] must fail. The subject of all of the Trustee's claims against NetBank, of course, is intangible— the *value* in the Hayfield real estate that was encumbered via the attachment of a mortgage lien in favor of NetBank. The whole goal of the Trustee's request for relief under § 544 was to free up the property from any claim of lien, any attachment of value under color of the first mortgage instrument. Had the Trustee received that, relief under the counts under §§ 549 and 362 would have followed in logical sequence: if the value in the land that was identified to Rebecca Ibach's debt to NetBank had not been attached under the first mortgage instrument as of the date of the Debtors' bankruptcy filing, the post-petition attachment of a lien under the second mortgage instrument to secure a like amount of pre-petition debt, having never been authorized by the bankruptcy court, was both an act affecting property of the bankruptcy estate that violated the

14. Counsel will note that the analysis contained no citation to any of the federally-generated caselaw on any substantive point of Minnesota law. This was deliberate. Counsel had agreed on the record that, as of the date of oral argument, the Bankruptcy Appellate Panel's opinion in *Vondall* was "the controlling precedent on the issue at hand," and that any disposition by the Eighth Circuit would be likewise. However, if an issue is governed by state law, then state-generated caselaw is the first source of guidance. Indeed, in our constitutional structure of divided sovereignty, it is to be deemed the premier source of guidance, and the *sole* source of *controlling* precedent. Federal courts have the power to *apply* state law where necessary, and where appropriate may summarize or rephrase its precepts as long as they exercise care and restraint. But their pronouncements are not the "first principles" to which a federal forum must resort in divining state law. And, in spite of the temptation to use the federal courts' summarization or logic for argument and citation, the only accurate course is to go back to the first principles as articulated by the state courts. Here, that source enabled a decision—admittedly, with some digging into hoary old appellate opinions, translation of 19th-century legal writing style, and a lot of organization. But in the end, this was the source of the applicable law. Unlike one recent federally-generated pronouncement on Minnesota law, it was not open to challenge on the accuracy of its artic-

ulation of the governing precepts. *See In re Stradtmann*, 391 B.R. at 18 (describing test for "apparent" facial defect in legal description for constructive notice, as "if it renders the legal description 'impossible' and it can be cured in only one way"—a collection of words not found in any opinion of the Minnesota state appellate courts, and one not self-evident in its meaning).

15. As to the second mortgage instrument, the Trustee framed his request for relief in his violation-of-automatic-stay theory under 11 U.S.C. § 362(h) [so designated pre-BAPCPA; now designated as 11 U.S.C. § 362(k) ]. That statute gives certain remedies to "[a]n individual injured by any willful violation of a stay provided by" 11 U.S.C. § 362, including awards of actual and punitive damages, costs, and attorneys' fees. The Trustee posits himself as the "individual" for the application of this section. However, the *bankruptcy estate* is the real party in interest here, not the Trustee. It is far from clear whether the estate is an "individual" under § 362(h). *See In re Just Brakes Corp. Sys., Inc.*, 108 F.3d 881, 884–885 (8th Cir.1997) (word "individual" in § 362(h) is to be given its "plain meaning"). However, the general equitable powers under the Bankruptcy Code's "all-writs" provision, 11 U.S.C. § 105(a), unquestionably give the court the power to redress intentional violations of the automatic stay that injure a bankruptcy estate. *Id.*

automatic stay, and a post-petition transfer to NetBank that would have been avoidable at the Trustee's instance.[16]

However, that value was already encumbered by NetBank's lien in a fashion enforceable against the estate, and it was not available for administration in bankruptcy. The Trustee thus lacks the predicate for his counts under §§ 549, 362, and 105—the repose in the bankruptcy estate of substantial unencumbered value in the Hayfield real estate, as of the date when the second mortgage instrument was filed for record. So, the Trustee is not entitled to judgment on those counts either.

## III. Validity of Ziebell's Alteration of First Mortgage Instrument.

The bankruptcy estate had no interest in the value of the property otherwise affected when Ziebell altered the already-executed first mortgage instrument to produce the second version. Thus, the Trustee has no standing to complain of Ziebell's act or to obtain any relief if Ziebell did violate Minnesota law by failing to obtain a new acknowledgment from the Debtors. *Jewell v. United States*, 548 F.3d 1168, 1172 (8th Cir.2008) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992); to have constitutionally-mandated standing to sue in federal court, plaintiff must have "injury in fact," an actual or imminent concrete and particularized invasion of a legally-protected interest). His request for an annulment of the second mortgage instrument must be denied.

## IV. Disposition of Issues Raised by Trustee's Motion.

On the rulings just made, the Trustee's motion for summary judgment must be denied in all respects.

NetBank did not make a formal cross-motion for summary judgment; almost by afterthought, its attorney requested a grant of summary judgment in favor of his client in the very last paragraph of his brief. However, it is open to the Court to grant summary judgment in NetBank's favor: all material facts were uncontested, all legal issues going to both sides' rights under the subject counts of the Trustee's complaint were raised by the Trustee's motion, and both sides had ample opportunity to fully develop their positions on them. *Figg v. Russell*, 433 F.3d 593, 597 (8th Cir.2006); *Bendet v. Sandoz Pharm. Corp.*, 308 F.3d 907, 912 (8th Cir.2002); *Shur–Value Stamps, Inc. v. Phillips Petroleum Co.*, 50 F.3d 592, 595 (8th Cir. 1995); *Interco Inc. v. Nat'l Surety Corp.*, 900 F.2d 1264, 1268–1269 (8th Cir.1990). The nature of all of those issues made both sides subject to a thumbs-up/thumbs-down, winner-take-all disposition as to all of them—a circumstance that further neutralizes any possibility of prejudice to the party not receiving summary judgment. Under the circumstances, there is no reason not to memorialize a final result in NetBank's favor on the three counts, and no purpose would be served by further delay; so NetBank will be granted summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 326, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

16. The Trustee does not deny that the facial recitations of the second mortgage instrument were sufficient under Minnesota law to evidence a mortgage lien against the Hayfield real estate. If there was no valid, perfected mortgage lien in favor of NetBank as of the date of the Debtors' bankruptcy filing, the value in the real estate nominally encumbered under the first mortgage instrument passed into the bankruptcy estate by operation of 11 U.S.C. § 541(a). Since the Debtors had not claimed an exemption to that value, and thus were never allowed one, it would have remained part of the estate when Ziebell filed the second mortgage instrument in his belated effort to correct the original omission.

However, this will *not* result in the entry of a judgment at the present time. One count of the Trustee's complaint is still in suit, and not yet unpresented for judicial decision: the Trustee's request for the avoidance of NetBank's mortgage lien as a preferential transfer under 11 U.S.C. § 547. One branch of potential appellate review has made a strongly-voiced dictate to defer entry of judgment in an adversary proceeding until decision has been rendered on every last claim and defense in suit. *In re Hicks,* 369 B.R. 420, 422–423 (8th Cir. BAP 2007); *In re Strong,* 293 B.R. 764, 767–768 (8th Cir. BAP 2003). *See also Interstate Power Co. v. Kansas City Power & Light Co.,* 992 F.2d 804, 806–807 (8th Cir.1993) (to avoid piecemeal appeals over claims founded on common issues of fact, trial courts should be reluctant to make "Rule 54(b) certification," so as to direct entry of "final judgment as to one or more but fewer than all of the claims or parties" involved in an action); *Hardie v. Cotter and Co.,* 819 F.2d 181, 182 (8th Cir.1987). So, it will be left to the Plaintiff to decide whether he pursues the remaining count or not; and once the disposition of that count is final, entry of judgment will be ordered as to all of the counts.

### ORDER

IT IS THEREFORE ORDERED:

1. The Plaintiff's motion for summary judgment is denied.

2. Summary judgment is granted to Defendant NetBank, in accordance with the rulings in the remaining dispositive terms of this order.

3. The Plaintiff is not entitled under 11 U.S.C. § 544(a)(3) to the avoidance of, or any other relief against, the mortgage lien granted by Debtor Rebecca Ibach against certain real estate in Dodge County, Minnesota, under an instrument filed in the office of the County Recorder for Dodge County, Minnesota, on September 1, 2005, document no. A161875.

4. The Plaintiff is not entitled under 11 U.S.C. §§ 105, 362, or 549 to the avoidance of, or any other relief relating to, the mortgage lien against certain real estate in Dodge County, Minnesota, evidenced by an instrument filed in the office of the County Recorder for Dodge County, Minnesota, on November 1, 2005, document no. A162997.

5. Since the Plaintiff lacks standing to contest the validity of the mortgage instrument described in Term 4, his request for an annulment of that instrument and the voiding of any associated lien as a matter of Minnesota state law is denied.

6. Entry of judgment on Terms 3–5 of this order shall be deferred pending the final disposition of the Plaintiff's remaining request for relief.