## BARNEY V. LITTLE et al. .

1. MORTGAGE RECORD: INDEX ENTRY. A mortgage was filed in the Recorder's office, and entered of ·record on page "546" of the proper book. The index entry showed the names of the grantor and grantee, and substantially the "nature of the instrument" and the book in which the record could be found; but stated the page of the record as "596," and omitted the other requirements of section 1213 of the Code of 1851: It was *held*, that the index operated as constructive notice of the acts which would be disclosed by an examination of the record.

2. CONSTRUCTIVE NOTICE. Constructive.notice, arising from the registry of instruments, is purely a matter of positive statutory regulation. When the prerequisites of the law are substantially complied with, the law raises a presumption of notice which is conclusive and incontrovertible.

3. BEGINNING OF CONSTRUCTIVE NOTICE. Constructive notice runs from the time the proper entries are made in the index book, provided the subsequent steps necessary to perfect the record are taken.

*Appeal from Lee District Court.*

WEDNESDAY, APRIL 6.

ON the 29th day of March, 1853, David R. Little executed to Charles Mason, his mortgage on three tracts of land, in Lee County, to secure $2,400 of the purchase-money therefor. This mortgage was duly acknowledged, was filed for record with the Recorder on the 31st day of March, 1853, and recorded at length in Book No. 3 of Mortgages, at page 546; being in its proper order and placed in the record book. Afterwards, viz., in 1856, 1857 and 1858, the defendants, Robert Robertson, Williams and Worley, severally purchased of Little portions of the land embraced in the Mason mortgage, and the defendant, George Robertson,

Barney v. Little.

became the mortgagee of another portion from the said Little. None of these parties had actual notice of the Mason mortgage. The only question is, whether the record of that mortgage imparted constructive notice to them. The parties made the following agreement of facts.

"1st. That, prior to 1859, there were no indices to the mortgage records of Lee county, which contained either 'a description of the property, the date of the instrument, or the date of filing,' but said indices contained only the names of the grantor and grantee, and the pages of the record. Every volume was indexed separately in the manner above stated.

"2d. The separate index book to said volume 3, has on the outside thereof the following label:

"MORTGAGE INDEX:
"BOOK No. 3,
"LEE COUNTY, IOWA."

3d. The only index entry of any mortgage, from Little to Mason, in Book 3, is the following:

| MORTGAGOR. | To | MORTGAGEE. | PAGE. |
|---|---|---|---|
| " Little, David R., ...... | " | Same. [Charles Mason.] | 596 |

4th. In said index, under letter "L," are some thirty entries. The following will give a correct idea of the nature of the entries:

| MORTGAGOR. | To | MORTGAGEE. | PAGE. |
|---|---|---|---|
| Lines, John H., ......... | " | Mary Ann Reeves, .... | 19 |
| Loring, Lucius, ......... | " | J. P. Walker, ......... | 39 |
| * * * * * * * * | | * * * * * * * | |
| Lamb, Wallace, ........ | " | Charles Mason, ........ | 527 |
| Little, David R., ......... | " | Same, ................ | 596 |
| Lowestein, Wm., ....... | " | Same, ................ | 582 |
| Lakin, Dorcas B., ....... | " | Same, ................ | 593 |
| Leoffler, George, ........ | " | Same, ................ | 599 |

And so on; each page, with the exception of the mortgage in question, being of a lower number than the one immediately succeeding it.

The Court below held that the record of the plaintiff's mortgage affected the defendant's with constructive notice, and rendered a decree accordingly. Defendants, Robertson and Worley, appeal.

*R. H. Gilmore*, with whom was *Rankin & McCrary*, for the appellant, Robertson.

I. As to actual notice, it is proved that the first knowledge defendant had of the mortgage was when the notice in the foreclosure proceedings were served upon him. Did he have such constructive knowledge as the law requires? (Code of 1851, §§ 1211–1213; *Miller* v. *Bradford et al.*, 12 Iowa, 14.)

II. If the index entries are made as required, all the world will be held to have constructive notice of the conveyance to which they refer.

III. It is the making of the whole entry and all of the entries required which gives this notice; and a failure to make it as required, is no notice of anything, not even of the imperfect entry as it stands.

IV. A subsequent purchaser is not affected constructively with such knowledge as the index entries afford, unless they afford such knowledge and all the law requires.

V. An imperfect and illegal entry does not have the effect of "putting him upon inquiry," unless it is shown that he had actual knowledge of such entry as it stands.

VI. That the doctrine of "being put on inquiry" applies only to actual notice; that it has not, and cannot have, any reference to constructive notice under our statute.

VII. An imperfect index entry, which, if actually seen by the subsequent purchaser, would give him such a hint as would put a prudent man on inquiry, may be held to

have given him notice, if he be shown to have had actual knowledge of it.

VIII. Actual notice cannot be inferred from partial and imperfect constructive notice.

*D. F. Miller* for the appellant, Worley.

*H. Scott Howell* for Barney, appellee.

I. There was enough in the index entry to place a pru. dent man upon his inquiry, and if this is accomplished, it matters not that all of the items presented by the statute did not appear. (*Johnston* v. *Gwathmey*, 4 Litt., 317; *Parker* v. *Brooks*, 9 Vesey, 583; *Furris* v. *Cheny*, 2 Verm., 384; *Sterry* v. *Arden*, 1 John. Ch., 261; *Bostwick* v. *Powers et al.*, 12 Iowa, 456; *Miller* v. *Bradford et al.*, 12 Id., 14; *Calvin* v. *Bowman et al.*, 10 Id., 529; 4 Kent, 179; 1 Hilliard Mort., 632; 2 Story, 461; Sug. Ven., 552; *Huide et al.* v. *Vateer*, 1 McLean, 110; *Bowman's Devisees et al.* v. *Wathen et al.*, 2 Id., 400; *McGehee* v. *Gindrat*, 20 Ala., 100; *Carr* v. *Hilton*, 1 Curtis [Me.], 393; *The Plowboy*, 1 Gall., 41; *Eskridge* v. *McClure*, 2 Yerg., 84; *Green* v. *Slayter*, 4 John. Ch., 39; 2 S. C. in Eq., 83; *Williamson* v. *Brown*, 15 N. Y., 354; *Dussuame et al.* v. *Burnett et al.*, 5 Iowa, 85; *Wilson* v. *Holcomb*, 13 Id., 110.)

II. It matters not that a purchaser did not examine the record. He is nevertheless charged with constructive notice. (*Bostwick* v. *Powers*, 12 Iowa, 456; *Doyle* v. *McLean*, 4 Scam., 285.)

III. The validity of the record not having been made by the Legislature to depend upon a strict performance of his duty by the Recorder, by making a correct index, his omissions or clerical mistakes are of little consequence. These requirements of the statute are ministerial and directory, and hence not vital or absolutely essential to impart constructive notice. (*The People* v. *Cook*, 14 Barb.,

Barney v. Little.

290; S. C., 4 Seld., 67; *The People* v. *Allen*, 6 Wend., 486; *Jackson* v. *Young*, 5 Conn., 269; *Cook* v. *Hall.* 1 Gil., 575; *Corliss* v. *Corliss*, 8 Verm., 290; *Holland* v. *Osgood*, Id., 280; *McLanen* v. *Thompson*, 40 Me., 284; *Curtis* v. *Lyman*, 24 Verm., 388.)

DILLON, J.—The only question presented by the record is, whether the registry of this mortgage was so imperfect and incomplete as not to charge subsequent purchasers and mortgagees with constructive notice. We quote those sections of the Code of 1851, relating to this subject:

"SECTION 1211. No instrument affecting real estate is of any validity against subsequent purchasers, for a valuable consideration without notice, unless recorded in the office of the Recorder of Deeds of the county in which the land lies, as hereinafter provided."

"SECTION 1212. It shall not be deemed lawfully recorded unless it has been previously acknowledged or proved in the manner hereinafter prescribed."

"SECTION 1213. The Recorder of Deeds must keep an entry book or index, the pages of which are so divided as to show in parallel columns:

· "*First.* The grantors.

"*Second.* The grantees.

"*Third.* The time when the instrument is filed.

"*Fourth.* The date of the instrument.

"*Fifth.* The nature of the instrument.

"*Sixth.* The book and page where the record may be found.

"*Seventh.* The description of the lands conveyed in the manner following: [Here follows the form of an index.]

"SECTION 1214. The Recorder must indorse upon every instrument, properly filed in his office for record, the time when it was so filed; and shall forthwith make the entries provided for in the last preceding section, except the book

and page where the record of the instrument may be found; and from that time such entries shall furnish constructive notice to all the world of the rights of the grantee conferred by such instrument."

"SECTION 1216. Every such instrument shall be recorded as soon as practicable, in a suitable book to be kept by the Recorder for that purpose, after which he shall complete the entries aforesaid, so as to show the book and page where the record is to be found."

The index entry in question contains the name of the grantor and of the grantee. As the entry is contained in a book entitled "Index to Mortgage Records, Book No. 3," and is headed "mortgagor" and "mortgagee," it substantially gives the nature of the instrument and the book where it may be found." It gives the page of the book, but gives this inaccurately. What is wholly omitted is item three, the time of filing; item four, date of instrument, and item seven, descriptions of lands conveyed. The instrument itself was correctly recorded in Book 3, at page 546, instead of at page 596, as shown by the index.

Notice is of two kinds: *first*, actual; *second*, constructive. There was no actual notice, and hence the plaintiff must rely upon constructive notice to the appellants of his mortgage. Constructive notice arising from the registry of instruments is purely a matter of positive statutory regulation. When the prerequisites of the statute, whatever they may be, are substantially complied with, the law declares that the world has notice and will not allow any individual to show that he in fact did not have notice. In other words the presumption of notice which the law in such cases raises, is conclusive and incontrovertible.

In the case of *Barney* v. *McCarty*, decided at the present term, we had occasion to consider the nature of the index book under the former recording act in this State. It was there held that the total omission to index the plaintiff's

mortgage, deprived the record of it of the quality of imparting implied notice.

The general nature and spirit of that law and of the present one are the same. By that law notice began from the time of filing the instrument for record, but this presupposed (as we held) that the other and subsequent steps would be taken. By the present law the notice begins from the time the requisite entries are made in the entry book or index. But this, as in the other case, presupposes that the subsequent requirements or steps will be observed. The law requires the instrument to be recorded as soon as practicable in the record book. § 1216. Now suppose a grantee files his instrument for record to-day, and the officer thereupon "forthwith makes the entries" in the index book, which it is declared shall "from that time furnish constructive notice to all the world," and to-morrow he voluntarily withdraws it so that it can never be recorded. It is then neither on file, nor is it spread upon the records. Can it be contended reasonably that these entries would accomplish all that a complete and perfect registration would effect? We think not. The whole law must be looked at. If any distinction is to be made, the record book is after all the main one. The chief object of the index book is that which its name implies. Its function is in the first place to indicate the existence of all instruments which are recorded or on file to be recorded. If there is no index of an instrument the searcher after titles has a right to assume that none such is on file or on the record.

Its office in the next place is to point out the book and page where the instrument is recorded. These are the essential uses and purposes of the index book. To facilitate the examination of titles, the present law, it is true, has directed the index to contain the date of the instrument; the date of filing and description of the property. Still this does not supercede the necessity of a record.

The index entry may be perfect and complete, and yet the instrument referred to may have a defective acknowledgment. Will the "entries in the index" in such case "furnish constructive notice to all the world of the rights of the grantee conferred by the instrument?" Clearly not.

Without the provision as to notice contained in section 1214, it would be a very doubtful question when notice began. Would it commence from the time of filing, or only from the time the instrument is, in the language of section 1211, "recorded?" The books abound with questions of this kind where the matter is not clearly settled by statute. Thus, in *Moore* v. *Collins*, 4 Dev., 384, overruling *S. C.*, 3 Id., 126, it was held that a deed not registered by reason of the death of the clerk until after the time limited by law, though deposited for record within the time, was void. A similar view was taken in *Scott* v. *Doe*, 1 Hemp. (U. S.), 275.

An opposite view is elsewhere taken; and it is considered that if the instrument is filed in time, the day when it is spread upon the record is not material, and the instrument when registered will relate back to the time it was lodged or deposited with the proper officer for record. *Gill* v. *Fauntleroy*, 8 B. Monr., 177, 181; *McGregor* v. *Hall*, 3 Stew. & Port, 397; *Harrold* v. *Simond*, 9 Mo., 323; 2 Washb. Real Prop., 591.

Thus it is seen that a statute like the present prevents the question which Mr. Bell alludes to as having arisen in Scotland between a *sasine* (the instrument of *enfeofment*) first transcribed though last presented, and a *sasine* which, by the minute book, is proved to have been first presented though last transcribed. 1 Bell's Com., 679; *apud* 4 Kent Com., 458, note.

"The delivery of the deed to the Clerk," says the Supreme Court of Vermont in *Sawyer* v. *Adams*, 8 Vt., 172, "or his minute on the same, that he has received the same

for record, is not the recording, but the record if completed is considered as taking effect from that time." We have made these references for the purpose of showing the necessity which exists for a distinct provision, fixing the time when constructive notice begins. And the primary object and design of section 1214 was to declare that a deed when recorded was to have effect not from that time only, nor yet from the time of filing for record, but from the time an entry was made in the index book, the object of which entry is to advise persons of the existence of the instrument.

The prior decisions of this Court have settled that, while the index, which serves, so to speak, as a finger board to direct the inquirer, must not mislead him by giving a totally wrong description of the lands. (*Scoles* v. *Wilsey et al.*, 11 Iowa, 261), yet it is not necessarily and essentially a prerequisite to a valid registration that the index should contain a description of the lands conveyed. It is sufficient if it points to the record with reasonable certainty. *Bostwick* v. *Powers*, 12 Iowa, 456; *Calvin* v. *Bowman*, 10 Iowa, 529.

If the grantor's and grantees' names are given in the index, with the book and page where the instrument is recorded, and if the instrument is there really recorded, we believe that this, so far as the object of the recording act is concerned, is a substantial, though it may not be in all respects, as to the index book a literal compliance with the law. For the record book and the index book are not to be considered as detached and independent books, but related and connected ones, and a party (assuming it to be an instrument which the law authorizes and requires to be recorded) is, where the index makes the requisite reference, affected with notice of any facts which either book contains with respect to the title of his proposed grantor.

Were it not for the mispaging in the index of the plain-

tiff's mortgage, we are all agreed that the requirements of the law were, in substance, observed. It remains briefly to consider the effect of this error.

The proposition is indisputable and clear, founded in reason, and sanctioned by authority, that "if an ordinarily diligent search of the records will bring to an inquirer knowledge of a prior incumbrance or alienation, he is presumed to know of it." 2 Wash. Real Prop. 596, § 63; *Flynt* v. *Arnold*, 2 Met., 619–625. The prior decisions of this court (*Bostwick* v. *Powers*, and *Calvin* v. *Bowman*), rest upon this principle; and although questioned by counsel, they have not produced any authority showing, or tending to show, that these cases should have been *decided* differently.

In addition to the authorities above referred to, the quite recent case of *Merrick* v. *Wallace*, 19 Ill., 486–498, takes a similar view of the recording acts, and applies the same principle as to notice. In this case the original deed conveyed the "S. E. ¼ section 34," &c.; but, as recorded, it contained an impossible description, reading thus: "S. E. ¼ of section thirteen four," &c. It was held, by the Supreme Court of Illinois, that the record of it charged a subsequent purchaser with notice, and this though it was shown he made no examination.

It is a purchaser's duty to examine the records. The law places the means at his disposal. It requires all matters affecting titles to appear of record. If he omits to examine, he is to impute the loss, if any, to his own indolence or folly. *Astor* v. *Wells*, 4 Wheat., 466. Assuming the instrument to be one which may properly be registered, the law charges him with a knowledge of all facts which an ordinarily careful examination of the records would have made him cognizant of. Having thus settled the ru'e which is to be applied, the Court cannot avoid the conclusion, that, if the appellants, in the case under consideration, had made an ordinarily diligent, skillful and careful exami-

nation of the records, the mortgage in question would have been discovered to them.

In the index they find an entry of a mortgage from their proposed grantor (Little) to Mason, purporting to be recorded on page 596. Turning to that page, they find, indeed, a mortgage to Mason, but from a different grantor. Reading that mortgage, it would be seen that it conveyed different lands from those which their grantor proposed to sell. This would and should provoke careful. scrutiny. The index would be again referred to; and it would be seen that the next preceding entry is of a mortgage to the same grantee, on page 527, while the next succeeding entry is of a mortgage to the same grantee, on page 582. It would be found that page 596 is placed between 527 and 582, while all the other figures in the whole index under letter "L" ascend in regular numerical order from top to bottom of the page. To a competent examiner, it would occur that it was much more likely that a recorder should mistake a figure than the name of a party. Between the two pages last above named, viz., at page 546, the mortgage referred to by the index would have been found, duly acknowledged, and regularly recorded in its proper place and order.

Under these circumstances, we concur in the conclusion that the court below rightly held that the appellants were chargeable with notice of the plaintiff's mortgage.

As to the alleged representations and concealment of the plaintiff's agent, the court below has made no such finding of facts as to entitle the appellants to have this question reviewed in this court. *Barney* v. *McCarty, supra.*

Decree affirmed.