PACK THOMAS et al. vs. PETER HANSON et al.

Argued Oct. 22, 1894. Reversed Dec. 6, 1894.

No. 9144.

**Sp. Laws 1858, ch. 64, construed.**

*Held,* that by Sp. Laws 1858, ch. 64, Toombs county was not only established, but also organized, and the office of register of deeds created.

**An officer's certificate is evidence without proof that he held the office.**

Where an indorsement on the back of a deed purports to be a certificate of registration, signed by the register of deeds of that county, certifying that the deed was recorded in his office March 13, 1862, *held,* it was sufficient evidence that the deed was so recorded, without proof that such register had been appointed or elected.

**Register's certificate of record good without his official seal.**

The failure of the register to affix his official seal to such certificate is cured by 1878, G. S. ch. 8, § 188.

**Public records continue to be notice although burned.**

Such public records do not cease to be constructive notice when they are burned.

**Laws 1864, ch. 67, construed.**

The provisions of Laws 1864, ch. 67, attaching said county to Stearns county for recording purposes, construed, and *held* the record of deeds already recorded in the former county does not cease to be constructive notice by reason of the provisions of section 2 of said act.

**The record of deeds is not invalid because not kept at the county seat.**

The register of deeds should have kept his office at the county seat, but his failure to do so does not render void the records in his office.

Appeal by plaintiffs, Pack Thomas and Edwin S. Graham, from a judgment of the District Court of Wilkin County, *Calvin L. Brown,* J., entered September 1, 1893.

On August 1, 1856, Joseph Renville, Jr., a Sioux half breed Indian located, with certain half breed script issued to him, the northeast quarter of the northwest quarter and the northwest quarter of the northeast quarter of section fifteen (15), T. 132, R. 47, containing eighty acres and afterwards in due time received a patent therefor from the United States. On May 7, 1860, he deeded the land with warranty to R. Junius Mendenhall. This deed was recorded March 13, 1862, in the Registry of Deeds of Toombs County in Book A. page 96 and a certificate of registry was indorsed thereon. This certificate was signed by L. R. Bently, the Register, but was not sealed with his official seal. He kept his office and records at McCauleyville in that county, but Breckinridge was the county seat. Soon after, the records were destroyed by fire. The title of Mendenhall through several mesne conveyances came to the plaintiffs. The land is embraced in the present county of Wilkin.

On January 31, 1877, Renville fraudulently made another warranty deed of the land to defendant, Peter Hanson, who bought in good faith for a valuable consideration and without actual notice of the former deed to Mendenhall. The land has remained vacant and unoccupied. The plaintiffs brought this action June 11, 1887, under 1878 G. S. ch. 75, § 2, to determine the adverse claim of Hanson, and they also made Mendenhall a party defendant. The defendant Hanson answered and the issues were tried by the court June 1, 1893. Findings were made and judgment entered thereon that Peter Hanson is the owner of the land and barring plaintiffs from asserting title thereto and adjudging that they pay Hanson $63.80 costs. The trial court was of opinion that Toombs county was not organized by Sp. Laws 1858, ch. 64, or entitled to a Register of Deeds and that Bentley's record at McCauleyville was not constructive notice to subsequent purchasers of Mendenhall's title. From this judgment plaintiffs appeal.

*Lyman B. Everdell,* for appellants.

The Legislature having by Sp. Laws 1858, ch. 64, established the county of Toombs and provided for the filling of the office of Regis-

ter of Deeds, exhausted its power in that respect, and thereafter there existed by virtue of that act the office *de jure* of Register of Deeds for that county and a place in the county for the recording of conveyances of real estate.

March 13, 1862, L. R. Bentley was *de facto* Register of Deeds of that county, and was actually keeping books of record, and those records were subsequently destroyed by fire. Being an officer *de facto*, it is not necessary to prove his appointment to office. It is sufficient that he was actually performing the duties of the office. Upon production of a deed, bearing a certificate of record in a duly organized county, it is not necessary to prove that the person purporting to have signed the same, is a duly elected officer of the county. The absence of the official seal of the Register on the certificate is cured by 1878 G. S. ch. 8, § 188.

An intending purchaser, searching the records in good faith and with the view of finding out the exact state of the title, cannot fail to use the Tract Index books; and if he does use them, his attention must inevitably be drawn to any conveyance possibly affecting the title, whether in the chain of title or not. Any examination which does not go to this extent, can hardly be more than one intended to satisfy the law, and with a view of not finding what he does not wish to see. A remarkably well considered case upon this point is that of *Fallass* v. *Pierce*, 30 Wis. 443, a case four times argued upon this point.

We attach no importance to the fact that Bentley the Register kept his office and records at McCauleyville. This was a matter over which the party filing his papers for record had no control. The Register could have been compelled by proper proceedings to remove his office to the county seat.

*McCumber & Bogart*, for respondent.

Defendant Hanson claims title through Joseph Renville Jr., and wife by deed dated January 21, 1877, and recorded in Wilkin county, February 6, 1877. In 1858 Toombs county was established. Sp. Laws 1858, ch. 64. In 1863, the name was changed to Andy Johnson. Sp. Laws 1863, ch. 13. In 1864, it was attached to Stearns county for judicial and recording purposes. Laws 1864, ch. 67. In 1867, it was attached to Douglas county for the same

purposes. Laws 1867, ch. 159. In 1868, its name was changed: to Wilkin. Laws 1868, ch. 115. In 1872, Wilkin county was or- ganized. Laws 1872, ch. 83. The act of 1864, attaching Andy Johnson county to Stearns county, provides for the recording im the latter county of deeds of lands in the former, whether exe- cuted prior or subsequent to the passage of the act, and with the same effect as the record of a conveyance of land situated in Stearns county. After the date of such record it constituted no- tice to purchasers and others to the same extent and with the same effect as if the conveyance were recorded in Andy Johnson county.

Laws 1875, ch. 51, provides that every conveyance by deed of warranty or otherwise, of land situated within this state shall be recorded in the office of the register of deeds in the county where such real estate is situated, and every such conveyance not so re- corded shall be void as against any subsequent purchaser in good faith and for a valuable consideration of the same real estate, whose conveyance, whether in the form of a warranty deed or deed of bargain and sale or otherwise is first duly recorded.

We contend that Laws 1858, ch. 64, established, but did not or- ganize the county of Toombs." The title of this act is: "An act to establish the county of Toombs." Section one of the act pro- vides that certain territory which is described "is hereby estab- lished as the county of Toombs," and "the county seat is hereby located at Breckenridge." It is evident that this act did not of itself organize this into a county. If not, then by what other act. was it organized?

According to the claim of plaintiffs there must have been two separate and distinct organizations of this county, the one under Sp. Laws 1854, ch. 64, and the other under Laws 1872, ch. 83. All of the acts concerning Toombs county aside from the act of 1858 disprove the claim that it was ever organized. The only evidence to prove organization is that L. R. Bently assumed to. act as register of deeds at McCauleyville, a place about sixteen miles from the county seat and that he certified to the recording of Mendenhall's deed. This evidence is insufficient because the act of a particular person in assuming to hold a particular office is not evidence of the existence of such office. If a party might by his own acts constitute himself an officer *de facto*, one single act;

such as the certifying to the record of one deed, is not sufficient evidence to constitute him such officer *de facto*.

Where a deed is not recorded and a subsequent deed from the same grantor is recorded, the latter will have preference.    *Jackson* v. *Lamphire*, 3 Pet. 280.

The record of a deed from a stranger to the title to another stranger, is not constructive notice to a subsequent purchaser.

CANTY, J.    The land in controversy is situated within the limits of what was once Toombs county, in this state.    In 1856 the land was patented to one Renville.    May 7, 1860, he conveyed it by warranty deed to R. J. Mendenhall.    The two main questions in the case are (1) whether on March 13, 1862, Toombs county was organized, and had a register of deeds; and (2) whether this deed was on that day recorded in his office.    Sp. Laws 1858 ch. 64 (Comp. St. 1849–1858, p. 106), defines the boundaries of the county, and provides that "the same is hereby established as the county of Toombs." Section 2 provides:    "The governor shall appoint three suitable persons who shall constitute a board of county commissioners for said county, who shall hold their offices until the next general election or until their successors are duly elected and qualified; and the said board of county commissioners shall have power to appoint all other county officers in and for said county."

The trial court finds:    "This deed, from an indorsement on the back thereof, purports to have been recorded on the 13th day of March, 1862, in the office of the register of deeds in and for the county of Toombs, in which county the said land was then situated. The certificate of registration on the back of said deed is in the words and figures following, to wit:

"'Office of Register of Deeds, County of Toombs, Minn.

"I hereby certify that the within deed was filed in this office for record on the thirteenth day of March, 1862, at 4 o'clock p. m., and was duly recorded in Book A, pages 96 and 97.

"'L. R. Bentley, Register of Deeds.'

"The official seal of said register is not attached to said certificate, and there is no evidence before me that said county of Toombs was ever organized, or that said Bentley was ever appointed to said

office, further than the certificate so appearing on said deed, and the testimony of a witness to the effect that said Bentley kept his office at McCauleyville, in said county, instead of Breckenridge, the county seat of said county. And I find that whatever records were kept by said Bentley were so kept at said McCauleyville, in said county, and were wholly destroyed by fire at said place some time in the year 1862."

The trial court held that "there is nothing to show that Toombs county was ever organized and entitled to a register of deeds, or that Bentley was ever appointed," and that such alleged record of this deed should not be held constructive notice to the defendant, who obtained a conveyance of the same premises from Renville, January 31, 1877. We cannot agree with the trial court. We are of the opinion that, by the act of 1858, the county was not merely established, but also organized, and the office of register of deeds created. While the first section of the act purports to establish the county merely, it seems to us that the second section organizes it, at least so far as to create the board of county commissioners and other county officers. While there is no proof that the governor ever appointed county commissioners, and that they appointed a register of deeds, or that one was subsequently elected, such proof is not necessary. For such purposes as this, proof that a person is acting as a public officer is sufficient proof that he is such officer. 1 Greenl. Ev. §§ 83, 92.

By Sp. Laws 1863, ch. 13, the name of Toombs county was changed to Andy Johnson county. It was attached to Stearns county for judicial and recording purposes by Laws 1864, ch. 67, section 2 of which provides for recording in Stearns county deeds of land in Andy Johnson county, "whether executed prior or subsequent to the passage of the act, with the same effect as a conveyance of land situated in the last-named county and shall from and after the date of such record constitute notice to purchasers and others to the same extent and with the same effect as if said conveyances, contracts, instruments or agreements were recorded in said county of Andy Johnson."

No provision is made for transcribing the records of Andy Johnson or Toombs county into those of Stearns county, or of ascertaining the contents of the burned records, and restoring them in

Stearns county.. The fact that the records of Toombs county may have been burned does not destroy their effect as constructive notice, and we cannot hold that, by the above-quoted language, it was the intention of the legislature to unseat or annul those records for the purpose of constructive notice thereafter, though it was the legislative intent to allow the recording or re-recording in Stearns county of deeds made prior thereto.

By Laws 1867, ch. 113, Andy Johnson county was attached for judicial and recording purposes to Douglas county; and by Laws 1868, ch. 115, its name was changed to Wilkin county. By Laws 1872, ch. 83 Wilkin county was organized. It does not follow from this that Toombs county was not organized prior to March 13, 1862. By attaching the county first to Stearns, and afterwards to Douglas, whatever organization it once had was to some extent undone, and it became necessary to that extent, at least, to reorganize the county. In any event, the opinion of the legislature as to whether or not it was organized by the act of 1858 cannot control. *Bingham* v. *Board Sup'rs*, 8 Minn. 441 (Gil. 390).

The failure of the register of deeds to affix his official seal to the certificate of registration on the back of the deed is cured by 1878, G. S. ch. 8, § 188.

The register should have kept his office at the county seat, but his failure to do so does not render void the records of his office.

These are all the points raised worthy of consideration, and the judgment appealed from is reversed.

GILFILLAN, C. J., absent on account of sickness, took no part.

(Opinion published 61 N. W. 135.)