**MIDCOUNTRY BANK, f/k/a First Federal fsb, Respondent,**

v.

**Frederick C. KRUEGER and Nancy Krueger, Respondents,**

**Cherolyn A. Hinshaw, et al., Appellants.**

No. A08–534.

Supreme Court of Minnesota.

May 20, 2010.

Justin P. Weinberg, Charles W. Hanson, Matthew C. Berger, Gislason & Hunter LLP, New Ulm, MN, for respondent MidCountry Bank, f/k/a First Federal fsb.

James M. Lockhart, Christopher R. Grote, Karla M. Vehrs, Lindquist & Vennum PLLP, Minneapolis, MN, for appellants.

OPINION

ANDERSON, G. BARRY, Justice.

At issue in this appeal is whether a mortgage was "properly recorded" under Minn.Stat. § 507.32 (2008), thereby giving constructive notice to a subsequent purchaser of land and a mortgagee.

Respondent MidCountry Bank brought an action in district court to foreclose a mortgage on property owned by appellant Cherolyn Hinshaw (the "Hinshaw property").[1] Appellant PHH Home Loans also held a mortgage against the Hinshaw property. MidCountry argued that its mortgage on the property was properly recorded by the Scott County Recorder's Office prior to the recording of Hinshaw's deed and PHH's mortgage, giving constructive notice to Hinshaw and PHH of the MidCountry mortgage. Hinshaw and PHH argued that MidCountry's mortgage was not properly recorded, and therefore Hinshaw and PHH could not be charged with constructive notice of its existence, they were good faith purchasers, and their interests took priority over the MidCountry mortgage. The parties submitted cross-motions for summary judgment. The district court granted summary judgment for Hinshaw and PHH, concluding that MidCountry's mortgage was not properly recorded because it did not appear in the tract index as part of the real estate county records as an encumbrance to the Hinshaw property, and thus provided no constructive notice to Hinshaw or PHH. The court then declared MidCountry's interest in the property void as against Hinshaw's and PHH's interests.

MidCountry appealed and the court of appeals reversed. *MidCountry Bank v. Krueger*, 762 N.W.2d 278, 280, 286 (Minn. App.2009). The court determined that MidCountry's mortgage was indexed in the grantor-grantee index and had a date and time recording stamp on it, making it properly recorded. *Id.* at 283–84. Based on the determination that the mortgage

---

1. MidCountry's mortgage also encumbered two other pieces of property, both owned by Frederick and Nancy Krueger. The district court granted default judgment for MidCountry against the Kruegers. Those properties are not at issue.

was properly recorded, it concluded that Hinshaw and PHH had constructive notice of MidCountry's mortgage. *Id.* at 286. We granted Hinshaw and PHH's petition for review to decide whether MidCountry's mortgage was properly recorded, thereby providing constructive notice to Hinshaw and PHH. We affirm.

Both parties agree that there are no material facts in dispute. On March 21, 2000, Frederick and Nancy Krueger purchased the Hinshaw property in Belle Plaine, Minnesota.[2] Four years later, the Kruegers obtained a loan from MidCountry to purchase two different parcels of land (the "Krueger properties") and to build a house on the acquired property.[3]

To provide security for the loan, the Kruegers executed and delivered a mortgage to MidCountry that encumbered not only the Krueger properties but also the Hinshaw property purchased four years earlier. On May 19, 2004, the deed to the Krueger properties and the MidCountry mortgage were delivered to the Scott County Recorder's Office to be recorded.

### Recording Process

The Scott County Recorder provided deposition testimony concerning the process for recording real-property instruments. Scott County uses the TriMin computer system to electronically store all official property records. The day after a document is delivered to the recorder's office to be recorded, a label is placed on the document showing the date, time of receipt, and the document number to fulfill the requirements of Minn.Stat. § 386.41 (2008). After the labeling procedure is complete, information about the document is entered into the TriMin system, beginning with the names of the grantor and grantee, the date of the document, and the legal description of the property contained in the document.

When a deed and a mortgage are brought in together to be recorded, such as here, the recorder will "clone" the legal description from the first document entered into the system, and apply that legal description to the second document so that the information does not have to be reentered. The recorder assumes that the legal descriptions are the same for the bundled documents. After the recorder enters the information into the system, the documents are scanned so that an image of each document is available on the TriMin system. Scott County has been scanning real estate documents presented for recording since approximately 1991. The public can access the records at the recorder's office or via the county recorder's website. But the information contained on the county recorder's website is only for reference purposes and is not considered the official record for county property recording purposes. In addition, images of documents that may have a Social Security number are not available on the website due to privacy concerns. Images of such documents are, however, available on the county recorder's official in-house system.

Minnesota Statutes §§ 386.03–.05 and 386.32 (2008) require a county to maintain a grantor-grantee index, a consecutive in-

**2.** The legal description of the Hinshaw property is Lot 12, Rearrangement of Block 44, Borough of Belle Plaine, Scott County, Minnesota.

**3.** The legal descriptions of the Krueger properties are (1) Lot 18, Block 5, City of Belle Plaine, Scott County, Minnesota; and (2) Part of Outlot B, Wildlife View Addition lying South of the West extension of the North line of Alley in Block 5, City of Belle Plaine, Scott County, Minnesota.

dex, and a tract index.[4] The TriMin system satisfies these requirements because it is searchable by (1) grantor-grantee name (the grantor-grantee index), (2) tract/legal description (the tract index), and (3) document number. If a search is conducted by the name of the grantor or grantee, any document under the grantor or grantee name will be listed. The search also displays the type of instrument, the document number, the date it was recorded, and a brief legal description of the property. On the county recorder's official in-house system, users of the system have several options that allow them to review specific information, such as the legal description of property and images of documents.[5]

### Scott County Recorder's Office and the MidCountry Mortgage

When the deed to the Krueger properties and the MidCountry mortgage were delivered to the Scott County Recorder's Office to be recorded, the deed and the mortgage were labeled as received on May 19, 2004, and were marked as document numbers A657035 and A657036, respectively. The deed to the Krueger properties was entered into the TriMin system prior to the MidCountry mortgage. But because the deed transferred only the two Krueger properties, the deed only contained the legal descriptions of those two Krueger properties. Only those two descriptions were entered into the TriMin system as being related to that document. The next document was the MidCountry mortgage, and the recorder's office cloned the legal descriptions from the deed for the legal descriptions in the TriMin system for the mortgage. Because the legal descriptions in the deed referenced the two Krueger properties and only those legal descriptions were cloned for the mortgage, the only way that the TriMin system showed the mortgage as encumbering the third property—the Hinshaw property— was by the imaged copy of page three of the mortgage, which stated that it encumbered the Hinshaw property in addition to the Krueger properties.

### Kruegers' Conveyance of the Hinshaw Property to Hinshaw and Foreclosure

Two years after the MidCountry mortgage was delivered to the Scott County Recorder's Office to be recorded, the Kruegers conveyed the Hinshaw property to Hinshaw, but without any recorded documentary disclosure of the mortgage to MidCountry.[6] Hinshaw executed a mortgage on the property and delivered it to PHH. The Scott County Recorder's Office recorded the deed from the Kruegers to Hinshaw and Hinshaw's mortgage to PHH on May 31, 2006, as document numbers A740490 and A740491, respectively. The Kruegers defaulted on the MidCountry mortgage, which encumbered not only the Krueger properties, but also the Hinshaw property. MidCountry brought an action in district court to foreclose on the Krueger properties and the Hinshaw property.

4. Prior to 2005, a county recorder's office was permitted, but not required, to keep a tract index. *See* Act of Mar. 7, 2005, ch. 4, § 75, 2005 Minn. Laws 10, 40 (codified at Minn.Stat. § 386.05 (2008)) (changing the words *"may* procure ... and keep ... [a] tract index" to *"shall* procure ... and keep ... [a] tract index" (emphasis added)).

5. For instance, a user of the in-house system has the option of placing an "X" next to a document in order to enter into a document number inquiry screen to view additional information. From there, a user can push the "F8" key to view more specific information about the legal description of the land, or the "F13" key to view an image of the document.

6. The Kruegers apparently did not disclose to Hinshaw that the Hinshaw property was still encumbered by the MidCountry mortgage, and did not obtain a satisfaction, release, or consent from MidCountry.

In connection with the foreclosure process, MidCountry filed a notice of lis pendens on the properties with the Scott County Recorder's Office on October 18, 2006.

The licensed abstracter that had conducted title examinations of the Hinshaw property prior to Hinshaw's purchase of the Hinshaw property from the Kruegers testified, as part of the foreclosure discovery process, that she had performed two title examinations prior to the sale of the Hinshaw property. She had performed those searches by using the tract index (i.e., searched by entering the legal description of the property), and those searches did not indicate that the MidCountry mortgage was recorded against the Hinshaw property. She did not check the grantor-grantee index (i.e., did not search by grantor or grantee name), because she testified that she does not routinely check that index when performing title examinations, but will if requested.

After MidCountry filed its complaint against Hinshaw and PHH, the abstracter performed additional title searches on the Hinshaw property to determine if she had missed finding the MidCountry mortgage as encumbering the property. None of the additional searches, including searches of the grantor-grantee index, indicated that the MidCountry mortgage appeared in the Scott County Recorder's Office records as encumbering the Hinshaw property. There is no indication that the abstracter checked the imaged copy of the mortgage during those searches. Also, MidCountry's notice of lis pendens, as it appeared in the TriMin system, did not list the MidCountry mortgage as encumbering the Hinshaw property.

MidCountry hired its own abstracter to search the Scott County records to see if the MidCountry mortgage was recorded against the Hinshaw property; the initial search did not indicate that it was recorded as encumbering the Hinshaw property. Another search one month later also did not reveal that the mortgage was recorded against the Hinshaw property.

In the district court, MidCountry argued that the mortgage was properly recorded with respect to the Hinshaw property because the mortgage had a label showing the date and time of recording, and because it appeared in the grantor-grantee index. The district court rejected these arguments, concluding that the label is not evidence that the mortgage was properly recorded, and merely shows the time of receipt and record of an instrument recorded. Further, the court found that there was nothing to show that the mortgage had been properly recorded prior to May 12, 2006—the day Hinshaw purchased the property and delivered a mortgage to PHH. The court noted that this was confirmed by the county recorder from the Scott County Recorder's Office, who testified that the county had failed to properly record or index the MidCountry mortgage on May 19, 2004, and only later corrected it sometime after October 31, 2006. As a result, the court held that the mortgage was not properly recorded, and granted summary judgment in favor of Hinshaw and PHH because neither could be charged with actual, implied, or constructive notice of the MidCountry mortgage.

MidCountry appealed and the court of appeals reversed. *MidCountry Bank v. Krueger*, 762 N.W.2d 278, 282, 286 (Minn. App.2009). The court of appeals determined that although the MidCountry mortgage was not in the tract index, it bore the recording label required by Minn.Stat. § 386.41. *MidCountry Bank*, 762 N.W.2d at 284. The court considered this label presumptive proof that the document was properly recorded. *Id.* Further, the mortgage appeared in the grantor-grantee index as of May 2006. *Id.* The court con-

cluded that the "record" of a document includes not only the document numbers and information as indexed, but also the contents of the recorded documents, including legal descriptions contained therein. *Id.* at 285. Because page three of the mortgage listed the Hinshaw property as subject to the MidCountry mortgage, and the document appeared in the grantor-grantee index under the Kruegers' names, the court held that the mortgage was properly recorded, and Hinshaw and PHH could be charged with constructive notice. *Id.* at 285–86. We granted review.

## I.

Hinshaw and PHH argue that because the MidCountry mortgage was not properly indexed in the Scott County Recorder's Office as required by Minn.Stat. §§ 386.03–.05, the mortgage was not properly recorded under Minn.Stat. § 507.32, and they should not be charged with constructive notice of its existence.

When there is an appeal from summary judgment, this court must "determine whether there are any genuine issues of material fact and whether a party is entitled to judgment as a matter of law." *Metro. Airports Comm'n v. Noble,* 763 N.W.2d 639, 643 (Minn.2009). Where, as here, there were cross-motions for summary judgment by the parties and both parties agree that there are no genuine issues of material fact, we review the district court's application of the law de novo. *Minn. Voters Alliance v. City of Minneapolis,* 766 N.W.2d 683, 688 (Minn.2009).

The Minnesota Recording Act gives priority to those who purchase property in good faith, for valuable consider-ation, and who first record their interests, by providing that

> [e]very conveyance of real estate shall be recorded in the office of the county recorder of the county where such real estate is situated; and every such conveyance not so recorded shall be void as against any subsequent purchaser in good faith and for a valuable consideration of the same real estate ... whose conveyance is first duly recorded.

Minn.Stat. § 507.34 (2008). A "good faith purchaser" is someone "who gives consideration in good faith without actual, implied, or constructive notice of inconsistent outstanding rights of others." *Anderson v. Graham Inv. Co.,* 263 N.W.2d 382, 384 (Minn.1978). A purchaser with actual, implied, or constructive notice of the outstanding rights of others "is not ... entitled to the protection of the Recording Act." *Id.* A mortgage is a conveyance of real estate for purposes of Minn.Stat. § 507.34. *See Chergosky v. Crosstown Bell, Inc.,* 463 N.W.2d 522, 524–25 (Minn.1990). Hinshaw and PHH have the burden of proving good-faith-purchaser status since they are the parties resisting the MidCountry mortgage. *See Miller v. Hennen,* 438 N.W.2d 366, 369 (Minn.1989). The only dispute here is whether Hinshaw and PHH had constructive notice of the Mid-Country mortgage as a matter of law.

Minnesota Statutes § 507.32 charges a party with constructive notice of the record of any properly recorded instrument: "The record, as herein provided, of any instrument properly recorded shall be taken and deemed notice to parties." [7] Accordingly, we have said that " '[c]onstructive notice is a creature of statute, and as a matter of law, imputes notice to all purchasers of any properly recorded

---

7. This has been the law in Minnesota for over 140 years. *See* Minn.Stat. ch. 40, § 28 (1866).

instrument even though the purchaser has no actual notice of the record.'" *Miller*, 438 N.W.2d at 369–70 (quoting *Anderson*, 263 N.W.2d at 384). Constructive notice "arises as an inference or presumption of law from the mere fact of record." *Bailey v. Galpin*, 40 Minn. 319, 324, 41 N.W. 1054, 1055–56 (1889). Thus, in deciding whether Hinshaw and PHH should be charged with constructive notice, we must determine if the MidCountry mortgage was properly recorded. The first step in making this determination is to examine the process of recording and indexing.[8]

### A.

Hinshaw and PHH contend that proper recording of an instrument depends on whether a document is properly indexed by a county recorder's office because a county recorder is required by law to keep three property indexes under Minn.Stat. §§ 386.03–.05. Their argument rests on the premise that information contained in the indexes is part of the record, and that indexing is part of the recording process.

■ Our prior opinions support Hinshaw and PHH's implicit premise that information contained in the indexes is part of the record, and that indexing is part of the recording process. We have said that "[t]he entries required by law to be made in the reception books [ (indexes) ], and the transcribing of the instrument into the record book, constitute the full record." *Whitacre v. Martin*, 51 Minn. 421, 427, 53 N.W. 806, 807 (1892). Further, we have held that purchasers of property are "charged with notice both of the entries in the reception book [ (index) ] and of the full record" because a "subsequent pur-

chaser is presumed to have examined the whole record." *Latourell v. Hobart*, 135 Minn. 109, 113–14, 160 N.W. 259, 260–61 (1916). More recently, we have stated that "the county is required by law to make accurate and appropriate entries and the tract index is part of the record of which a purchaser is charged constructive notice." *Miller*, 438 N.W.2d at 370 (citation omitted) (internal quotation marks omitted). Because information in the indexes is considered part of the record of a document, the only logical conclusion we can draw is that indexing is part of the recording process.

■ The court of appeals concluded that if an instrument bears the certificate of recording required by Minn.Stat. § 386.41, that is presumptive proof that the instrument was properly recorded. *MidCountry Bank*, 762 N.W.2d at 284. The conclusion of the court of appeals is correct, but incomplete. Minnesota Statutes § 386.41 provides that

> [e]very county recorder shall endorse upon each instrument recorded, over the recorder's official signature, OFFICE OF THE COUNTY RECORDER, ... COUNTY, MINNESOTA, CERTIFIED, FILED, AND/OR RECORDED ON, the date and time when it was recorded and the document number and/or book and page in which it was recorded; and *every instrument shall be considered as recorded at the time so noted.*

(Emphasis added.) We agree with the court of appeals that if an instrument bears the recording label required by section 386.41, that is presumptive proof that the instrument was properly recorded. But that presumption rests on the under-

---

8. In Minnesota, property is either abstract or registered under the Torrens system. *See Hersh Props., LLC v. McDonald's Corp.*, 588 N.W.2d 728, 733 (Minn.1999) (discussing the differences between the abstract property re-

cording process and the registration process for registered property). It is undisputed that the Hinshaw property is abstract, not registered property.

standing that the subsequent steps in the recording process will be completed. Thus, while there is no dispute that the Scott County Recorder's Office affixed a label to the MidCountry mortgage on May 19, 2004, containing the endorsement and information required by Minn.Stat. § 386.41, Hinshaw and PHH are not precluded from attempting to rebut the presumption that the mortgage was properly recorded.[9]

To be clear, Minn.Stat. § 386.41 does not state, and we do not read it as meaning, that an instrument is properly recorded so long as it bears the endorsement of the county recorder, nor does section 386.41 exclude indexing from the recording process. Where, as here, the public records are available, further analysis is required before concluding that an instrument was properly recorded. This analysis requires examining the record of the instrument, which includes the indexes. Nevertheless, as Minn.Stat. § 386.41 states, an instrument is considered recorded as of the date and time specified on the recording label.

### B.

We turn next to Hinshaw and PHH's contention that proper recording requires

proper indexing, and that Minn.Stat. §§ 386.03–.05 and 386.32 establish the requirements for proper recording. Minnesota Statutes chapter 386 requires that a county recorder's office keep:

1. a *grantor-grantee reception index* that includes the date and time an instrument was received to be recorded, the names of the grantor and grantee, where the land is situated, the instrument number, and the type of instrument, Minn.Stat. § 386.03;

2. a *consecutive index* of all records showing the number of the instrument consecutively and the time of its reception, Minn.Stat. § 386.32, which may be combined with the grantor-grantee index required by section 386.03, Minn.Stat. § 386.04; and

3. a *tract index* that includes the legal description of the affected land and the type, date, and time of every instrument affecting the title to any land filed for record, Minn.Stat. § 386.05.[10]

Hinshaw and PHH argue that these statutes require the indexes to record the

---

9. In certain circumstances, the recording label may be the only proof that a document was recorded. For instance, in *Thomas v. Hanson,* all of the records maintained by the person acting as the county register of deeds were destroyed in a fire. 59 Minn. 274, 279–80, 61 N.W. 135, 136 (1894). Nevertheless, the person acting as the county register of deeds had endorsed the back of a controverted deed as to the *time and place of recording. Id.* at 278, 61 N.W. at 136. We held that although there was no other evidence that the deed had been recorded because the records had been destroyed, the endorsement was sufficient to establish that the deed had been recorded and provided constructive notice. *Id.* at 279–80, 61 N.W. at 136.

10. As mentioned in note 4, *supra,* a county recorder's office was not required to keep a

tract index prior to 2005. *See* Act of Mar. 7, 2005, ch. 4, § 75, 2005 Minn. Laws 10, 40. The Scott County Recorder's Office, however, maintained a tract index when the MidCountry mortgage was delivered to the recorder's office for recording on May 19, 2004. Before a county was required to keep a tract index, we had said that "[i]f a county chooses to maintain a tract index, the county is required by law to make accurate and appropriate entries and the tract index is part of the record of which a purchaser is charged constructive notice." *Miller,* 438 N.W.2d at 370 (citation omitted) (internal quotation marks omitted). Accordingly, it is acceptable to impose the 2004 requirements of Minn.Stat. § 386.05 on Scott County with respect to the MidCountry mortgage and the Hinshaw property. Nevertheless, because counties were only recently required to maintain tract in-

legal descriptions of property affected by a recorded instrument. They contend that Scott County's indexing system failed to do this, and thus the system did not show that the Hinshaw property was encumbered by the MidCountry mortgage. They maintain that even though the document number appeared in the grantor-grantee index under the Krueger name, the TriMin system did not list the description of the Hinshaw property in connection with the mortgage. According to Hinshaw and PHH, the indexing system failed to provide the "where situated" information required under Minn.Stat. ch. 386, making the MidCountry mortgage not properly recorded.

They cite *Thorp v. Merrill*, 21 Minn. 336 (1875), as supporting their argument. In *Thorp*, a mortgage encumbered the west half of the southeast quarter of section fourteen. *Id.* at 337. The document was delivered for recording, received the usual certificate of endorsement, but was entered into the county records as encumbering the west half of the northeast quarter of section fourteen. *Id.* at 337–38. We concluded that the effect of the error in the record was that the mortgage was not recorded. *Id.* at 338–39.

Hinshaw and PHH's reliance on *Thorp*, however, is misplaced. *Thorp* did not involve an indexing error; rather, the record of the deed misdescribed the mortgaged property, not the index. *See* 21 Minn. at 337–38. The record of the mortgage here is a scanned image with no misdescriptions, and page three of the mortgage clearly indicates that the mortgage encumbers the Hinshaw property.

■ Nevertheless, we note that the MidCountry mortgage was not listed in the tract index as encumbering the Hinshaw property. Additionally, if a title searcher looked under the mortgage's document number A657036 in the document number inquiry screen and pressed the "F8" key, the legal descriptions of the Krueger properties were listed, but not the Hinshaw property. Based on these omissions, the mortgage did not meet all of the indexing requirements of sections 386.03–.05 and 386.32. On the other hand, it did meet some of the requirements. Most importantly, the mortgage was listed in the historically primary grantor-grantee index under the names of both Frederick Krueger and Nancy Krueger. Further, the index provided information about the nature of the instrument (i.e., that the document was a mortgage), the mortgage's document number, and the date it was recorded. The "where situated" or legal description column gave the general location of the land as "Belle Plaine." Given the limited amount of space available for the column in the grantor-grantee index screen, it would have been impossible to provide there the full legal description of all the properties the MidCountry mortgage encumbered.[11]

An index is intended to be a springboard in helping the record searcher find the word-for-word record of the document that is on file with the county recorder's office as required by Minn.Stat. § 386.19 (2008).[12] The MidCountry mortgage was

---

dexes, we agree with the court of appeals that the grantor-grantee index may properly be described as "historically primary." *Mid-Country Bank,* 762 N.W.2d at 280, 283.

**11.** A screen print of the grantor-grantee index indicates that only 12 spaces are available in the "where situated" or legal description col-

umn. The legal description of all three of the properties encumbered by the MidCountry mortgage would take approximately 300 spaces.

**12.** Minnesota Statutes § 386.19 states:

The county recorder shall keep suitable word for word records ... of all instru-

listed in the grantor-grantee index under both of the Kruegers' names, and was described as situated in "Belle Plaine." The title searcher could have typed an "X" by the listing for the mortgage and entered into a document number inquiry screen that contained additional information about the mortgage. While viewing that screen, a title searcher could have viewed an image of the MidCountry mortgage and found on page three that it encumbered the Hinshaw property. Because the mortgage was listed in the grantor-grantee index under the Kruegers' names with a description of the land as located in "Belle Plaine," and there was an image of the document itself, which provided the correct legal description of each property that the mortgage encumbered, we conclude that the mortgage was properly recorded. Although the mortgage was properly recorded, it was imperfectly indexed; one screen revealed the mortgage while another screen showed the legal description of the Krueger properties and nothing for the Hinshaw property.

But imperfect indexing does not require the conclusion that the mortgage was not properly recorded for constructive notice purposes under section 507.32. Our prior cases are informative and lead us to conclude that "properly recorded" is not coterminous with perfect indexing or even perfect recording. In *Latourell v. Hobart,*

135 Minn. 109, 110, 160 N.W. 259 (1916), there was a discrepancy between the description of property in the "where situated" column of the index and the legal description as recorded from the deed. The index properly described the land as located in section 32, town 39, *range 22* of Pine County, and the record of the deed incorrectly referred to the land as located in section 32, town 39, *range 19. Id.* at 110, 160 N.W. at 259. We held that purchasers of property are charged with notice of the entries in the index and of the contents of the document itself. *Id.* at 114, 160 N.W. at 261.

> Each supplies defects in the other in giving constructive notice. A subsequent purchaser is presumed to have examined the whole record, and he is charged with such knowledge as the proper index entries afford, as well as with notice of the facts derived from the transcript of the [document] itself.

*Id.* at 113–14, 160 N.W. at 260–61.[13] Hinshaw and PHH attempt to distinguish *Latourell* by arguing that in *Latourell* the index contained the correct legal description, whereas here, the indexes did not.

We recognize that in *Latourell* the information in the index was correct and the record was incorrect, whereas here the information in the index was deficient and the information in the record was correct. But Hinshaw and PHH's attempt to limit

ments delivered to the recorder for record keeping. The recorder shall keep an alphabetical index either by manual or electronic means, to record, under the proper letter of the alphabet, the name of each grantor and grantee of any instrument delivered for recording.

Since territorial days, Minnesota has required county recorders to keep word-for-word records of real property instruments presented for recording. *See* Act of Nov. 1, 1849, ch. 21, § 5, 1849 Minn. Laws 75, 76 ("The register of deeds shall also keep suitable books, and shall record at large and in full, word for word, any instrument left with him for rec-

ord, keeping separate books for deeds, mortgages, and other instruments.").

13. *Latourell* did not specifically analyze the words "properly recorded" in what is now Minn.Stat. § 507.32. But the court in *Latourell* had to address an issue similar to what we must address here: what is required in the indexes and record of an instrument before someone can be charged with constructive notice of the recording of an instrument. *See* 135 Minn. at 110, 113–14, 160 N.W. at 259, 260–61.

the application of *Latourell* only to situations where the indexes are entirely correct is unpersuasive. Our statement in *Latourell* that "[e]ach supplies defects in the other in giving constructive notice. A subsequent purchaser *is presumed to have examined the whole record,* and he is charged with such knowledge as the proper index entries afford, *as well as with notice of the facts derived from the transcript of the [document] itself"* points to a subsequent purchaser's duty to look not only at the information in the indexes, but at the copy of the document itself. *Id.* at 113–14, 160 N.W. at 260–61 (emphasis added). This long-established rule has been stated in the following way:

> Entries in the reception book and the transcribing of the instrument into the record together constitute the full record of a deed so that where the records are inconsistent, a purchaser is charged with notice of any facts which either book contains with reference to the title of his proposed grantor.

40 Dunnell Minn. Digest *Recording Act* § 2.03(b) (4th ed. 1998).

Hinshaw and PHH also assert that we did not intend our statements in *Latourell* to apply to situations where the index is incorrect and the transcription of the document is correct, because we quoted *Barney v. Little,* 15 Iowa 527, 535 (1864), which stated that

> [t]he record book and the index book are not to be considered as detached and independent books, but related and connected ones, and a party . . . is, *where the index makes the requisite reference,* affected with notice of any facts which either book contains with respect to the title of his proposed grantor.

*Latourell,* 135 Minn. at 114, 160 N.W. at 261 (emphasis added). Hinshaw and PHH assert that *Latourell's* incorporation of the "requisite reference" quotation from *Bar-*

*ney* means that the indexes must be correct before the contents of the instrument itself can be imputed to a subsequent purchaser. But this argument overlooks the fact that in *Barney,* there was an indexing error; the index incorrectly stated that the document was recorded on page 596 of the record book, when in actuality it was recorded on page 546. *Barney,* 15 Iowa at 532. Regardless of the indexing error, the Iowa Supreme Court still imputed notice to the subsequent purchasers, *id.* at 536–37, because the recording was "substantial, though it may not be in all respects, as to the index book, a literal compliance with the law," *id.* at 535. Consequently, Hinshaw and PHH's argument that *Latourell's* "requisite reference" quote from *Barney* requires perfect indexing is inaccurate.

■ We find *Latourell* informative, although perhaps not dispositive here, and we read *Latourell* as indicating that there is a duty on a subsequent purchaser and title abstracter to examine the copy of a recorded document and not rely solely on information in the indexes. This is consistent with *Wacek v. Frink,* 51 Minn. 282, 284, 53 N.W. 633, 634 (1892), where we stated that an abstracter in preparing an abstract of title for land must "make a full and true search and examination of the records relating to the title of the land." In *Wacek,* where an abstracter relied entirely on a marginal reference in the index to determine the legal effect of a mortgage without examining the record, we held that the abstracter was negligent. *Id.* at 284, 53 N.W. at 634. This is also the approach stated in 1 Joyce Palomar, *Patton and Palomar on Land Titles* § 45 (3d ed. 2003) ("The abstract should be based on the recorded instruments themselves, and not on only what is shown by the index.").

We conclude that the indexes are the starting point for a subsequent purchaser

or title examiner, and that Hinshaw and PHH are charged with notice of the facts contained in the MidCountry mortgage itself because the mortgage was indexed in the grantor-grantee index under the correct names (the Kruegers) and an image of the document itself was available through the grantor-grantee index. We are not dealing with a misindexed document (e.g., a document indexed under the wrong grantor's or grantee's name), nor are we dealing with an unindexed document (i.e., a document that was not indexed at all). Instead, the mortgage here was indexed, although imperfectly. But we do not consider "properly recorded" as coterminous with "properly indexed." Rather, "properly recorded" requires a reference in the indexes sufficient to locate the document and a record of the document itself, and that between the indexes and the record, there is sufficient evidence that the document pertains to the property. Here, the MidCountry mortgage was listed in the grantor-grantee index, and an image of the document was available via this index. In spite of the incomplete legal description of the encumbered property in the index, the contents of the mortgage itself were available and compensated for the deficiencies in the indexes for constructive notice purposes. Therefore, although the mortgage may have been imperfectly indexed, it was "properly recorded." Because we conclude that the MidCountry mortgage was properly recorded, Hinshaw and PHH are charged with constructive notice of its existence, and therefore were not good faith purchasers.

### C.

Hinshaw and PHH cite cases from other jurisdictions in an effort to show that an instrument must be properly indexed in order to be considered properly recorded for constructive notice purposes. *E.g., Noyes v. Horr*, 13 Iowa 570 (1862); *How-*

*ard Sav. Bank v. Brunson*, 244 N.J.Super. 571, 582 A.2d 1305 (1990); *Hanson v. Zoller*, 187 N.W.2d 47 (N.D.1971). But these cases are from states that have different recording statutes, different indexing systems, and different case law precedent. Further, courts in other jurisdictions have rejected Hinshaw and PHH's position. *See, e.g., Miller v. Simonson*, 140 Idaho 287, 92 P.3d 537 (2004); *First Citizens Nat'l Bank v. Sherwood*, 583 Pa. 466, 879 A.2d 178 (2005). Looking to other jurisdictions for guidance is not instructive here.

### D.

Hinshaw and PHH also raise a policy argument in support of their position. They contend that if they are charged with constructive notice and are required to read the entire record, including the terms of the MidCountry mortgage imaged into an electronic system, then subsequent purchasers cannot rely on the recording and indexing performed by county recorders. Instead, purchasers would have to assume that the recording indexes are inaccurate and must read the full text of every document referenced in any index. They argue that this inefficiently places the risk of loss on subsequent purchasers when the risk of loss should be placed on the party seeking to have an instrument recorded with the county recorder's office because only that party would know what and where to check, and how to identify a problem. Further, Hinshaw and PHH argue that by not equating proper indexing with proper recording, title examinations will be more burdensome and real estate closings will be more expensive.

█ We understand Hinshaw and PHH's policy argument, but think it is overstated. Reviewing the legal descriptions contained in a mortgage that is in-

dexed under the names of the grantor and grantee is not overly burdensome, nor is checking documents that potentially relate to the property at issue. The electronic storing of real property records significantly reduces the burden of searching in comparison with the burden that existed prior to electronic access to county property records. Our conclusion that the Mid-Country mortgage was properly recorded for constructive notice purposes merely affirms what we believe the rule has been in this state for over 90 years: purchasers are presumed to have read and are charged with constructive notice of the entire record, including information contained in the indexes and the contents of the recorded document itself if it appears in the grantor-grantee index under the correct name.[14]

Because we hold that the MidCountry mortgage was properly recorded, thereby charging Hinshaw and PHH with constructive notice, MidCountry's mortgage takes priority over Hinshaw's and PHH's interests in the Hinshaw property. Accordingly, we affirm the court of appeals, although on different grounds.

Affirmed.

DIETZEN, J., took no part in the consideration or decision of this case.

---

**14.** The requirement that a subsequent purchaser and title abstracter must examine the records of the instrument themselves and a subsequent purchaser is imputed with notice of the instrument's contents appears to continue today in Minnesota. For example, the Legislature established the Minnesota Electronic Real Estate Recording Task Force "to study and make recommendations for the establishment of a system for the electronic filing and recording of real estate documents." Act of Apr. 14, 2000, ch. 391, § 1, 2000 Minn. Laws 500, 500–01. The Electronic Real Estate Recording Task Force prepared and submitted a report in 2001 to the Legislature, as required by the Act of Apr. 14, 2000; in the report, the task force noted the continued connection between the indexes and the transcription of the original document (which is now an electronic or imaged copy of the document) in an electronic records system: "The copy of the document and both indexes are public records, so anyone who wants to know who currently owns a particular parcel of property, or wishes to trace its history of ownership, may do so by searching the indexes and *then examining the documents* located through the search." Elec. Real Estate Recording Task Force, *Workplan Report to the Legislature* 13 (Jan. 15, 2001) (emphasis added). Minnesota continuing legal education resources also reflect an obligation to search the entire record of a document. For example:

> To determine the record title to abstract property, it is necessary to review all recorded documents affecting the property.
> ....
> The only protection for the purchaser is to check the records at the courthouse to the extent they are up to date, or obtain gap coverage from a title insurance company....

Minn. State Bar Ass'n, *Real Property Law in Minnesota* § 9, at 6, 10 (2010).

> Purchasers of interest ... in real estate are deemed to have constructive notice of all interests disclosed by "the record." Hence investigation of the record is essential to determine the existence of outstanding interests which constitute[ ] claims to title or defects in title.... [L]icensed abstractors ... investigate the records and prepare summaries of documents appearing in the record.

Minn. State Bar Ass'n, *How to Examine Title to Real Property–The Basics* § 1, at 11 (2008).